James E. Cecchi
Kevin G. Cooper
**CARELLA, BYRNE, CECCHI,**
**OLSTEIN, BRODY & AGNELLO P.C.**
5 Becker Farm Rd.
Roseland, New Jersey 07068
Telephone: (973) 994-1700
Facsimile: (973) 994-1744
Email: jcecchi@carellabyrne.com
        kcooper@carellabyrne.com

Kellie Lerner
William V. Reiss
David B. Rochelson
Adam C. Mendel
**ROBINS KAPLAN LLP**
399 Park Avenue, Suite 3600
New York, New York 10022
Telephone: (212) 980-7400
Facsimile: (212) 980-7499
Email: klerner@robinskaplan.com
Email: wreiss@robinskaplan.com
Email: drochelson@robinskaplan.com
Email: amendel@robinskaplan.com

[Additional counsel listed on signature page]

*Counsel for Plaintiffs and the Proposed Classes*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROBERT ALEXANDER BODINE, HALLE ELLINGSON, KURT HALL, BENNETT JOHNSON, KYLE MELQUIST, SAMANTHA STOLZENBACH, SHARON TRAINOR, AND STACEY VAIDIS,<br><br>       Plaintiffs,<br><br> -against-<br><br>JOHNSON & JOHNSON CONSUMER INC.,<br><br>       Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

   Plaintiffs Robert Alexander Bodine, Halle Ellingson, Kurt Hall, Bennett Johnson, Kyle

Melquist, Samantha Stolzenbach, Sharon Trainor, and Stacey Vaidis (together, "Plaintiffs"),

bring this action individually on behalf of themselves and as a class action on behalf of all others

similarly situated against Defendant Johnson & Johnson Consumer Inc. ("J&J" or "Defendant")

for damages, injunctive relief, and any and all other relief available. Plaintiffs demand a trial by jury on all issues so triable and complain and allege as follows:

## NATURE OF THE CASE

1.      Consumers purchase sunscreen in order to decrease their risk of developing skin cancer. Skin cancer is the most common form of cancer in the United States, and ultraviolet radiation from the sun is the number one cause of skin cancer. In order to decrease the risk of skin cancer, medical experts recommend sunscreen.[1]

2.      Sunscreen is a key component of skin cancer prevention. Last year alone, the market for suncare products was approximately $8 billion globally, with $1.6 billion of sales in the United States alone.[2]

3.      Defendant J&J is one of the largest manufacturers and distributors of sunscreen. Globally, J&J sold over $600 million in suncare products last year, nearly half of which was sold in the United States.[3] Among J&J's products are the widely popular Aveeno and Neutrogena sunscreens.

4.      Plaintiffs and other consumers purchased J&J's sunscreens to decrease their risk of skin cancer. Little did they know J&J's products contained an undisclosed carcinogen, benzene, that potentially *increases* their chances of developing the very cancer the product is marketed to prevent.

---

[1] Cleveland Clinic, Sun Exposure & Skin Cancer (Oct. 10, 2019), *available at* https://my.clevelandclinic.org/health/diseases/10985-sun-exposure--skin-cancer.

[2] Michael Erman & Julie Steenhuysen, *FDA Investigating How a Known Carcinogen Wound Up in J&J Suncreen*, Reuters (July 16, 2021), *available at* https://www.reuters.com/world/us/fda-investigating-how-known-carcinogen-wound-up-jj-sunscreen-2021-07-16/.

[3] *Id*.

5.      According to the Food & Drug Administration ("FDA"), benzene "should not be employed in the manufacture of drug substances, excipients, and drug products because of their unacceptable toxicity or . . . deleterious environmental effect." Where benzene use is "unavoidable in order to produce a drug product with a significant therapeutic advance," its concentration should be limited to no more than 2 parts per million ("ppm"). Benzene has no therapeutic advance or benefit in sunscreens, and therefore should not be present in such products.

6.      Yet in May 2021, the independent lab Valisure announced that it had detected dangerously high levels of benzene in numerous J&J products (the "Sunscreen Products").[4] Notably, Valisure identified benzene levels over 2 ppm in 10 Neutrogena sunscreen batches from five separate product lines, with levels even exceeding 6 ppm in some instances. Additionally, Valisure identified benzene levels between .1 and 2 ppm in thirteen Neutrogena sunscreen batches from ten different product lines.

7.      Alarmed by these results, Valisure filed a citizen petition with the FDA to recall the products on May 24, 2021.

8.      Despite knowing that its products contained benzene, J&J waited months before recalling five of its products:

- NEUTROGENA® Beach Defense® aerosol sunscreen,

- NEUTROGENA® Cool Dry Sport aerosol sunscreen,

- NEUTROGENA® Invisible Daily™ defense aerosol sunscreen,

- NEUTROGENA® Ultra Sheer® aerosol sunscreen, and

- AVEENO® Protect + Refresh aerosol sunscreen.

---

[4] The Sunscreen Products include the Neutrogena and Aveeno products listed in Paragraph 8, as well as those identified as containing benzene in the Valisure citizen petition, attached hereto as Exhibit A.

9.     The remaining J&J products found to contain dangerously high levels of benzene remain on the market.

10.    The presence of benzene is a particularly severe betrayal of J&J's customers, who purchased the products to decrease their risk of skin cancer, but who ended up unknowingly lathering carcinogens all over their skin. Making matters worse, J&J has long emphasized the safety and health benefits of its products, stressing that they are "#1 Dermatologist Recommended."

11.    Had J&J's customers known that the sunscreens they were using to decrease the risk of skin cancer had actually contained carcinogens, they certainly would not have purchased them.

## JURISDICTION AND VENUE

12.    This Court has jurisdiction over the subject matter of this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because this is a class action in which the matter in controversy exceeds $5,000,000, exclusive of interest and costs, and one or more of the members of each of the putative Classes (defined below) are citizens of a different state than Defendant.

13.    This Court has jurisdiction over J&J because J&J is incorporated in New Jersey, has its principal place of business in New Jersey, and is authorized to conduct and do business in New Jersey. J&J has marketed, manufactured, promoted, distributed, and sold sunscreen protection products, including the Sunscreen Products, from New Jersey. J&J has established sufficient minimum contacts with this State by having availed itself of the markets in this State through its promotion, manufacture, sale, distribution and marketing of its sunscreen protection products, such that exercise of jurisdiction by this Court is permissible. A substantial portion of all claims alleged on behalf of Plaintiffs and the Classes arise out of conduct occurring in New Jersey.

14.     Venue is proper in this District pursuant to 28 U.S.C. § 1391. Defendant transacts business in this District and is subject to personal jurisdiction here, and a substantial part of the events giving rise to the claims occurred in this District.

**PARTIES**

**A.     Plaintiffs**

15.     Plaintiff Robert Alexander Bodine is a resident of Lane County, Oregon. Plaintiff Bodine purchased at least one Sunscreen Product sold by Defendant. Plaintiff Bodine would not have purchased nor used the Sunscreen Products had Defendant not breached its express and implied warranties, and misrepresented, omitted, concealed, and/or failed to timely disclose the risks associated with the use of the Sunscreen Products. Thus, Plaintiff Bodine has suffered concrete injury as a direct and proximate result of Defendant's wrongful conduct.

16.     Plaintiff Halle Ellingson is a resident of Whatcom County, Washington. Plaintiff Ellingson purchased at least one Sunscreen Product sold by Defendant. Plaintiff Ellingson would not have purchased nor used the Sunscreen Products had Defendant not breached its express and implied warranties, and misrepresented, omitted, concealed, and/or failed to timely disclose the risks associated with the use of the Sunscreen Products. Thus, Plaintiff Ellingson has suffered concrete injury as a direct and proximate result of Defendant's wrongful conduct.

17.     Plaintiff Kurt Hall is a resident of Charleston County, South Carolina. Plaintiff Hall purchased at least one Sunscreen Product sold by Defendant. Plaintiff Hall would not have purchased nor used the Sunscreen Products had Defendant not breached its express and implied warranties, and misrepresented, omitted, concealed, and/or failed to timely disclose the risks associated with the use of the Sunscreen Products. Thus, Plaintiff Hall has suffered concrete injury as a direct and proximate result of Defendant's wrongful conduct.

18.     Plaintiff Bennett Johnson is a resident of Williamson County, Tennessee. Plaintiff Johnson purchased at least one Sunscreen Product sold by Defendant. Plaintiff Johnson would not have purchased nor used the Sunscreen Products had Defendant not breached its express and implied warranties, and misrepresented, omitted, concealed, and/or failed to timely disclose the risks associated with the use of the Sunscreen Products. Thus, Plaintiff Johnson has suffered concrete injury as a direct and proximate result of Defendant's wrongful conduct.

19.     Plaintiff Kyle Melquist is a resident of Wake County, North Carolina. Plaintiff Melquist purchased at least one Sunscreen Product sold by Defendant. Plaintiff Melquist would not have purchased nor used the Sunscreen Products had Defendant not breached its express and implied warranties, and misrepresented, omitted, concealed, and/or failed to timely disclose the risks associated with the use of the Sunscreen Products. Thus, Plaintiff Melquist has suffered concrete injury as a direct and proximate result of Defendant's wrongful conduct.

20.     Plaintiff Samantha Stolzenbach is a resident of Los Angeles County, California. Plaintiff Stolzenbach purchased at least one Sunscreen Product sold by Defendant. Plaintiff Stolzenbach would not have purchased nor used the Sunscreen Products had Defendant not breached its express and implied warranties, and misrepresented, omitted, concealed, and/or failed to timely disclose the risks associated with the use of the Sunscreen Products. Thus, Plaintiff Stolzenbach has suffered concrete injury as a direct and proximate result of Defendant's wrongful conduct.

21.     Plaintiff Sharon Trainor is a resident of Bay County, Florida. Plaintiff Trainor purchased at least one Sunscreen Product sold by Defendant. Plaintiff Trainor would not have purchased nor used the Sunscreen Products had Defendant not breached its express and implied warranties, and misrepresented, omitted, concealed, and/or failed to timely disclose the risks

associated with the use of the Sunscreen Products. Thus, Plaintiff Trainor has suffered concrete injury as a direct and proximate result of Defendant's wrongful conduct.

22.     Plaintiff Stacey Vaidis is a resident of Denver County, Colorado. Plaintiff Vaidis purchased at least one Sunscreen Product sold by Defendant. Plaintiff Vaidis would not have purchased nor used the Sunscreen Products had Defendant not breached its express and implied warranties, and misrepresented, omitted, concealed, and/or failed to timely disclose the risks associated with the use of the Sunscreen Products. Thus, Plaintiff Vaidis has suffered concrete injury as a direct and proximate result of Defendant's wrongful conduct.

**B.     Defendant**

23.     Defendant Johnson & Johnson Consumer Inc. is a New Jersey corporation with its principal place of business in Skillman, New Jersey. J&J is a subsidiary of the Johnson & Johnson conglomerate and the manufacturer and/or distributor of the Sunscreen Products.

## FACTUAL ALLEGATIONS

**A.     Benzene is a Known Carcinogen Whose Use is Heavily Regulated by the Food & Drug Administration**

24.     Benzene is a simple hydrocarbon found in crude oil, gasoline, and cigarette smoke. It is primarily used as a starting material to make other chemicals, including plastics, lubricants, dyes, detergents, drugs, and pesticides. In the past, it was used as an industrial solvent and gasoline additive. Leukemia, multiple myeloma, non-Hodgkin's lymphoma, and anemia are among the diseases found to be caused by or linked to benzene.

25.     The United States Department of Health and Health Services, World Health Organization, and International Agency for Research on Cancer view benzene as a carcinogen.

26.     According to FDA, benzene "should not be employed in the manufacture of drug substances, excipients, and drug products because of [its] unacceptable toxicity or . . . deleterious

environmental effect." Where benzene use is "unavoidable in order to produce a drug product with a significant therapeutic advance," its concentration should be limited to no more than 2 ppm.[5] The National Institute for Occupational Safety and Health recommends protective equipment be worn by any worker expecting to be exposed to benzene at concentrations of 0.1 ppm for over 10 hours or 1 ppm for 15 minutes, and lists "skin absorption" as one way a person could be exposed to dangerous levels of benzene.[6]

27.     The FDA regulates sunscreens as an over-the-counter drug. 21 C.F.R. § 352, *et seq.* The FDA's regulations provide that an "over-the-counter sunscreen drug product in a form suitable for topical administration is generally recognized as safe and effective and is not misbranded if it meets" certain conditions. 21 C.F.R. § 352.1(a).

28.     Benzene is not among the permitted active ingredients for sunscreen. 21 C.F.R. § 352.10 ("Sunscreen Drug Products for over-the-Counter Human Use: Sunscreen active ingredients"). Nor is benzene a suitable inactive ingredient for sunscreen, as inactive ingredients must be "safe in the amounts administered." 21 C.F.R. § 330.1(h) ("General conditions for general recognition as safe, effective and not misbranded"). Without a therapeutic benefit, benzene should not be used in sunscreens.

**B.     Valisure Discovers Dangerously High-Levels of Benzene in Defendant's Products**

29.     Valisure is an independent pharmacy well-respected for its work analyzing the safety of consumer products. For example, Valisure gained considerable attention for finding the

---

[5] Food and Drug Administration, *Q3C – Tables and List Guidance for Industry* (2017), *available at* https://www.fda.gov/media/71737/download.
[6] National Institute for Occupational Safety and Health (NIOSH), *Benzene*, *available at* https://www.cdc.gov/niosh/npg/npgd0049.html.

carcinogen N-nitrosodimethylamine in Zantac and its generic form, ranitidine, leading to a global recall of the one-time best-selling heartburn pill.[7]

30.     In May 2021, Valisure conducted a study on the potential carcinogenicity of sunscreens. During its study, Valisure detected dangerously high levels of benzene in numerous J&J products. This is in stark contrast to other sunscreens Valisure tested, many of which contained no benzene. The lack of benzene in other sunscreens is not surprising, considering that benzene has no known therapeutic benefit that would justify its use in sunscreen.

31.     Products with avoidable levels of benzene do not "contain[] only suitable inactive ingredients which are safe in the amounts administered" or contain only listed active ingredients at levels "that do[] not exceed the amount reasonably required to achieve [their] intended effect." 21 C.F.R. § 352.1(a); 21 C.F.R. § 330.1(e)(h). Accordingly, per FDA guidelines, any significant detection of benzene in the Sunscreen Products should be deemed unacceptable.

32.     Valisure detected unacceptably high levels of benzene in numerous J&J products. In particular, Valisure identified benzene levels over 2 ppm in ten Neutrogena sunscreen batches from five separate product lines.

33.     The amount of benzene in these products reached levels as high as 6.77 ppm, more than three times the amount the FDA would recommend even if there were a therapeutic advance or benefit, which there is not.

34.     Additionally, Valisure identified benzene levels between .1 and 2 ppm in thirteen other Neutrogena sunscreen batches from ten different product lines, and amounts below .1 ppm

---

[7] Caroyln Y. Johnson, *A Tiny Pharmacy is Identifying Big Problems with Common Drugs, Including Zantac*, Washington Post (Nov. 8, 2019), *available at* https://www.washingtonpost.com/science/a-tiny-pharmacy-is-identifying-big-problems-with-common-drugs-including-zantac/2019/11/08/6dd009ca-eb76-11e9-9c6d-436a0df4f31d_story.html.

in three additional products, all of which are unacceptable as benzene is not required to achieve sunscreen's intended effect.

35.     Valisure concluded that the presence of carcinogenic benzene in the Sunscreen Products is particularly troubling as the Sunscreen Products are "widely recommended for the prevention of skin cancer and regularly used by adults and children in large volumes." Furthermore, Valisure noted, because "[s]unscreen products are typically used in many times higher volume than standard drug products like tablets or capsules," "even a relatively low concentration limit can result in very high total exposure."

36.     The presence of benzene in sunscreen is particularly troubling because, according to researchers at Health Canada's Bureau of Chemical Hazards, the application of sunscreen specifically increases the absorption rate of benzene through the skin. According to one Yale University researcher and dermatologist, "there is not a safe level of benzene that can exist in sunscreen products."

37.     Following its study, Valisure filed a citizen petition with the FDA, detailing its findings and asking the FDA to recall all batches of sunscreen products in which benzene was detected, including the Sunscreen Products.

38.     As Valisure explained in its petition, the presence of benzene in the Sunscreen Products renders them adulterated under Section 501 of the Federal Drug and Cosmetics Act ("FDCA") and misbranded under Section 502 of the FDCA, in violation of 21 U.S.C. § 351 and 21 U.S.C. § 352, respectively.

39.     Yet despite the prohibition on manufacturing and distributing misbranded or adulterated drugs, J&J waited nearly two months before removing the Sunscreen Products from

the market. Furthermore, other J&J products containing dangerously high levels of benzene remain on the market.

40.    Valisure was unable to determine how benzene became present in J&J's sunscreens, which do not list benzene as either an active or inactive ingredient. Valisure proposed contamination as one possible explanation for the presence of benzene in J&J's sunscreens.

41.    To date, however, J&J has not explained why or how benzene is present in the Sunscreen Products, or whether J&J conducted testing that could have and should have detected benzene.

C.    **Defendant Deceptively Sells Its Carcinogenic Products to Consumers**

42.    J&J has long marketed its sunscreens, including the Sunscreen Products, as safe and healthy, making the presence of carcinogenic benzene in its products particularly shocking.

*1.    Neutrogena*

43.    J&J has long represented that its Neutrogena products are "#1 Dermatologist Recommended." The basis for this representation is unclear, and the claim remains unchanged despite Valisure's discovery of carcinogens in several J&J products.

44.    J&J's Neutrogena advertising and packaging emphasize the brand's safety and health benefits. For example, in its packaging and advertising for its Neutrogena Ultra Sheer products, which is among the Sunscreen Products, J&J repeatedly describes its products as "clean."

45.    J&J uses similar tactics in its commercials. For example, commercials for Neutrogena Ultra Sheer, starring actress Jennifer Garner, prominently display the representation, "#1 Dermatologist Recommended Suncare." In these commercials, Ms. Garner emphasizes the "clean" feel of the product and deems it "the best for your skin."

46.    Another commercial, advertising the Neutrogena Beach Defense line, features children playing on a beach and happily being sprayed with Neutrogena sunscreen, the "sun care

brand used most by dermatologists and their families." The imagery does not suggest that the children are being sprayed with carcinogens.

47.     Such claims are also found on Neutrogena's website. While the FDA requires testing for all sunscreen products, J&J touts its Neutrogena products as "[l]eading the way" in product testing, with an entire page on its website devoted to its high product-testing standards.

48.     According to the Neutrogena website, J&J "not only follow[s] individual country regulations, but also look[s] to incorporate the best thinking and practices from top authorities for skincare products around the world." J&J also states that Neutrogena "set[s] a high bar for using ingredients" which are "screened for quality, manufacturing process, government regulations, published research, and our own ingredient safety databases."

49.     And despite marketing the Sunscreen Products laced with a known carcinogen, J&J also asserts on the Neutrogena website that the safety of its products "goes beyond the ingredients list," with attention also paid to "how our ingredients are used, our manufacturing safeguards, how the products are used, and testing requirements for our products."

50.     Neutrogena even created the "Choose Skin Health Movement," which was purportedly designed to "change the future of skin health and reduce the risk of skin cancer through education, empowerment, and early detection." Several celebrities filmed spots for the campaign, including Ms. Garner and Kerry Washington. In one commercial, Ms. Garner emphasized the statistics on skin cancer and stated that she chooses Neutrogena products because "[she] choose[s] skin health." In another commercial, Ms. Garner states that, every day, she wears Neutrogena Ultra Sheer 45—which comes from the same product line as those found to contain benzene—because she chooses "skin health."

51.     In yet another video, Ms. Washington advises viewers to "[p]rotect yourself and those you love. Choose skin health for a lifetime of healthy skin." Yet choosing Neutrogena, and its benzene-containing products, is not choosing skin health.

    2.      *Aveeno*

52.     J&J's Aveeno products have similar branding. Aveeno products, including the Sunscreen Products, include claims that they have been "Dermatologist recommended for over 65 years."

53.     J&J's Aveeno website also emphasizes its health benefits. For example, J&J's "About Aveeno" webpage advises that it provides "Healthy Skin, Naturally: Nature fuels our healthy spirit, just like healthy skin fuels yours. We research and work with scientists and dermatologists around the world to unlock therapeutic power of nature's most restorative ingredients, giving you clinically-proven products that nurture and care for your skin, so you can care for what's most important in life." The webpage goes on to explain that Aveeno was started by two brothers who believed that "nature holds the secret to human health" after "[t]he famous Mayo Clinic dermatologists recognized [the brothers'] pioneering work."

54.     J&J's Aveeno website also contains a "Commitment to Wellness." According to this webpage, "Good enough' is never good enough for Aveeno®. Our internal standards for safety testing and ingredient quality far exceed those set by regulators around the world. We think about every element we use in every one of our products—where it came from, what it does and how it impacts you and your skin. Only ingredients that pass our strict 5-step safety assurance process are used."

    3.      *J&J*

55.     In addition to the claims it makes on the Aveeno and Neutrogena websites, J&J also promises a "Safety & Care Commitment." As part of this commitment, J&J claims that "Your

safety is our priority. That's why our safety assessment process meets or exceeds industry and regulatory standards for baby and beauty personal care products. It's a process that never ends— we continually review our product ingredients against the latest research and consumer feedback. We believe our process is among the most rigorous in the world and is at the core of our Safety & Care Commitment."

56.     J&J asserts that its "Safety & Care Commitment means that every product is carefully reviewed and evaluated against internationally recognized standards."

57.     J&J's failure to prevent the presence of benzene in the Sunscreen Products constitutes actionable fraud. J&J misled and defrauded consumers by making affirmative misrepresentations that portray the Sunscreen Products as safe and healthy, and omitting from the Sunscreen Products' packaging and marketing materials information about the actual danger of the Sunscreen Products, including any warning to consumers that the Sunscreen Products may contain unacceptable levels of cancer-causing benzene, rendering them adulterated, misbranded and illegal.

58.     The Sunscreen Products do not require benzene as an active ingredient, and even if they did, many of the Sunscreen Products still contain more than the FDA's 2 ppm concentration limit.

59.     Therefore the Sunscreen Products are adulterated, misbranded, illegal and unfit for sale in trade or commerce, and legally worthless. No consumer would have purchased the Sunscreen Products had they been truthfully and accurately labeled. Accordingly, Plaintiffs and the Classes (defined herein) were injured by paying the full purchase price of the Products.

60.     Plaintiffs and the Classes purchased the Sunscreen Products believing them to be free of benzene. Because J&J sold Plaintiffs and the Classes products that may contain dangerously high levels of benzene, Plaintiffs and the Classes were deprived of the benefit of their bargain.

## STATUTE OF LIMITATIONS

**A.     The Statute of Limitations Did Not Begin to Run Because Plaintiffs Did Not and Could Not Discover Defendant's Unlawful Conduct**

61.     The discovery rule tolled any statute of limitations otherwise applicable to the claims asserted herein.

62.     Plaintiffs and members of the Classes did not discover, and could not have discovered through the exercise of reasonable diligence, the presence of benzene in the Sunscreen Products until Valisure announced its findings in May 2021.

63.     Plaintiffs and members of the Classes had no knowledge that the Sunscreen Products contained benzene until Valisure announced its findings, or of facts sufficient to place them on inquiry notice of the claims set forth.

64.     Until May 2021, no information concerning the presence of benzene in the Sunscreen Products was in the public domain or available to Plaintiffs and members of the Classes.

65.     For these reasons, the statute of limitations as to the claims of Plaintiffs and the Classes did not begin to run until, at the earliest, May 2021.

**B.     Fraudulent Concealment Tolled the Statute of Limitations**

66.     In the alternative, J&J's fraudulent concealment tolled the statute of limitations on the claims asserted by Plaintiffs and the Classes.

67.     Under the fraudulent concealment doctrine, the claims of Plaintiffs and members of the Classes only accrue upon the discovery that J&J deceived them into purchasing the Sunscreen Products, which contain(ed) carcinogenic benzene.

68.     J&J kept Plaintiffs and members of the Classes in the dark by concealing crucial information required for the prosecution of their claims, without any fault or lack of diligence on their part. Plaintiffs and members of the Classes did not discover, and could not discover through the exercise of reasonable diligence, the presence of benzene in the Sunscreen Products, and therefore were unaware of J&J's deception.

69.     Plaintiffs and members of the Classes were unaware of J&J's deceptive conduct and did not know that they were purchasing products containing benzene. Plaintiffs and members of the Classes would not have purchased the Sunscreen Products had they known they contained benzene. No information, actual or constructive, was ever made available to Plaintiffs and members of the Classes that they were being injured by J&J's unlawful conduct.

70.     Notably, none of the Sunscreen Products list benzene as an active or inactive ingredient, and the FDA significantly limits the use of benzene. Benzene has no therapeutic purpose in sunscreens, and therefore should not have been present in the Sunscreen Products.

71.     Furthermore, J&J's advertising, labeling, and branding stress the healthy and safe nature of their products, including the Sunscreen Products. Nothing in the advertising, labeling, and branding materials would suggest that the Sunscreen Products contained benzene.

72.     Because the presence of benzene was not disclosed to customers until Valisure announced its findings in May 2021, Plaintiffs and members of the Classes had no knowledge of J&J's deception, or of any facts or information that would have caused a reasonably diligent person to investigate whether there was such deception, until at least May 2021.

73.     For these reasons, the statute of limitations applicable to the claims of Plaintiffs and the Classes was tolled and did not begin to run.

## CLASS ACTION ALLEGATIONS

74.     Plaintiffs bring this action on behalf of themselves and as a class action under Rule

23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure, on behalf of the following classes

of consumers[8]:

75.     **The Nationwide Class:**

All consumers who purchased any Sunscreen Products in the United States for
personal use or consumption. Excluded from the Nationwide Class are Defendant
and its employees, affiliates, parents, and subsidiaries, whether or not named in
this Complaint, as well as all federal governmental entities and instrumentalities
of the federal government, states, and their subdivisions, agencies, and
instruments.

76.     **The New Jersey Class:**

All consumers who purchased any Sunscreen Products in New Jersey for personal
use or consumption. Excluded from the New Jersey Class are Defendant and its
employees, affiliates, parents, and subsidiaries, whether or not named in this
Complaint, as well as all federal governmental entities and instrumentalities of the
federal government, states, and their subdivisions, agencies, and instruments.

77.     **The California Class:**

All consumers who purchased any Sunscreen Products in California for personal
use or consumption. Excluded from the California Class are Defendant and its
employees, affiliates, parents, and subsidiaries, whether or not named in this
Complaint, as well as all federal governmental entities and instrumentalities of the
federal government, states, and their subdivisions, agencies, and instruments.

78.     **The Colorado Class:**

All consumers who purchased any Sunscreen Products in Colorado for personal
use or consumption. Excluded from the Colorado Class are Defendant and its
employees, affiliates, parents, and subsidiaries, whether or not named in this
Complaint, as well as all federal governmental entities and instrumentalities of the
federal government, states, and their subdivisions, agencies, and instruments.

---

[8] For avoidance of doubt, Plaintiffs are not asserting claims in this action either individually or
on behalf of a class relating to personal bodily injury resulting from the use of Sunscreen
Products.

79.    **The Florida Class:**

All consumers who purchased any Sunscreen Products in Florida for personal use or consumption. Excluded from the Florida Class are Defendant and its employees, affiliates, parents, and subsidiaries, whether or not named in this Complaint, as well as all federal governmental entities and instrumentalities of the federal government, states, and their subdivisions, agencies, and instruments.

80.    **The North Carolina Class:**

All consumers who purchased any Sunscreen Products in North Carolina for personal use or consumption. Excluded from the North Carolina Class are Defendant and its employees, affiliates, parents, and subsidiaries, whether or not named in this Complaint, as well as all federal governmental entities and instrumentalities of the federal government, states, and their subdivisions, agencies, and instruments.

81.    **The Oregon Class:**

All consumers who purchased any Sunscreen Products in Oregon for personal use or consumption. Excluded from the Oregon Class are Defendant and its employees, affiliates, parents, and subsidiaries, whether or not named in this Complaint, as well as all federal governmental entities and instrumentalities of the federal government, states, and their subdivisions, agencies, and instruments.

82.    **The South Carolina Class:**

All consumers who purchased any Sunscreen Products in South Carolina for personal use or consumption. Excluded from the South Carolina Class are Defendant and its employees, affiliates, parents, and subsidiaries, whether or not named in this Complaint, as well as all federal governmental entities and instrumentalities of the federal government, states, and their subdivisions, agencies, and instruments.

83.    **The Tennessee Class:**

All consumers who purchased any Sunscreen Products in Tennessee for personal use or consumption. Excluded from the Tennessee Class are Defendant and its employees, affiliates, parents, and subsidiaries, whether or not named in this Complaint, as well as all federal governmental entities and instrumentalities of the federal government, states, and their subdivisions, agencies, and instruments.

84. **The Washington Class:**

All consumers who purchased any Sunscreen Products in Washington for personal use or consumption. Excluded from the Washington Class are Defendant and its employees, affiliates, parents, and subsidiaries, whether or not named in this Complaint, as well as all federal governmental entities and instrumentalities of the federal government, states, and their subdivisions, agencies, and instruments.

85.     The Nationwide Class, New Jersey Class, California Class, Colorado Class, Florida Class, North Carolina Class, Oregon Class, South Carolina Class, Tennessee Class, and Washington Class, are collectively referred to as the "Classes."

86.     The members of the proposed Classes are so numerous that joinder of all members would be impractical. The proposed Classes likely contain thousands or millions of members. The number of class members can be ascertained through discovery.

87.     The representative Plaintiffs' claims are typical of the claims of the members of the Classes. Plaintiffs and members of the Classes have been injured by the same wrongful practices of Defendant. Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of the members of the Classes and are based on the same legal theories.

88.     Plaintiffs are adequate representatives who will fully and adequately assert and protect the interests of the Classes, and have retained class counsel who are experienced and qualified in prosecuting class actions. Neither Plaintiffs nor their attorneys have any interests contrary to or in conflict with the Classes.

89.     There are common questions of law and fact that predominate over any questions affecting only individual members of the Classes, including:

(a) whether J&J's Sunscreen Products contained benzene;

(b) whether J&J's representations and omissions, seen in their marketing, advertising, packaging, labeling, and other promotional materials are misleading, or objectively reasonably likely to deceive;

(c) whether J&J's alleged conduct violates public policy;

(d) whether J&J engaged in false or misleading advertising;

(e) whether J&J's conduct violated the New Jersey Consumer Fraud Act (N.J.S.A. § 56:8-1, *et seq.*);

(f) whether J&J's conduct violated the California Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, *et seq.*);

(g) whether J&J's conduct violated the California Consumers Legal Remedies Act (Cal. Civ. Code § 1750, *et seq.*);

(h) whether J&J's conduct violated the Colorado Consumer Protection Act (Colo. Rev. Stat. Ann. § 6-1-101, *et seq.*);

(i) whether J&J's conduct violated the Florida Deceptive and Unfair Trade Practices Act (Fla. Stat. § 501.201, *et seq.*);

(j) whether J&J's conduct violated the North Carolina Unfair and Deceptive Trade Practices Act (N.C. Gen. Stat. Ann. § 75-1.1, *et seq.*);

(k) whether J&J's conduct violated the Oregon Unlawful Trade Practices Act (Or. Rev. Stat. Ann. § 646.605, *et seq.*);

(l) whether J&J's conduct violated the South Carolina Unfair Trade Practices Act (S.C. Code Ann. § 39-5-10, *et seq.*);

(m) whether J&J's conduct violated the Tennessee Consumer Protection Act of 1977 (Tenn. Code Ann. § 47-18-101, *et seq.*);

(n) whether J&J's conduct violated the Washington Consumer Protection Act (Wash. Rev. Code Ann. § 19.86.010, *et seq*.);

(o) whether J&J's conduct violated the breach of express warranty causes of action in California, Colorado, Florida, North Carolina, Oregon, South Carolina, Tennessee, and Washington;

(p) whether J&J's conduct violated the breach of implied warranty causes of action in California, Colorado, Florida, North Carolina, Oregon, South Carolina, Tennessee, and Washington;

(q) whether J&J is liable to Plaintiffs and the Classes for unjust enrichment;

(r) whether the statute of limitations was tolled due to the discovery rule and/or fraudulent concealment;

(s) whether Plaintiffs and members of the Classes are entitled to treble damages, damages, and/or restitution and the proper measure of that loss; and

(t) whether Plaintiffs and the members of the Classes are entitled to declaratory and injunctive relief.

90.     A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Classes is economically infeasible and procedurally impracticable. While the aggregate damages sustained by the Classes are likely in the millions of dollars, the individual damages incurred by each Class member are too small to warrant the expense of individual suits. The likelihood of individual Class members prosecuting their own separate claims is remote, and even if every member of the Classes could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases. Further, individual members of the Classes do not

have a significant interest in individually controlling the prosecution of separate actions, and individualized actions would result in varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and the court system because that would result from multiple trials of the same factual and legal issues. Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

91.     Plaintiffs and Class members also seek injunctive relief. They do not have an adequate remedy at law because many of the resulting injuries are reoccurring, and Plaintiffs and Class members will be forced to bring multiple lawsuits to rectify the same conduct. If an injunction is not issued, Plaintiffs and Class members will suffer irreparable injury. Plaintiffs and Class members are entitled to an order enjoining J&J from engaging in the unlawful conduct alleged in this complaint, requiring J&J to recall all benzene-containing sunscreen products that it has not yet recalled, implementing procedures to identify other products that may contain benzene, requiring J&J to disclose the amount of benzene in any product it sells, prohibiting J&J from releasing or selling any such products in the future without disclosing their benzene content, and other appropriate equitable relief.

### **FIRST CAUSE OF ACTION**
Violation of New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1, *et seq*.
(On Behalf of the New Jersey Class)

92.     Plaintiffs assert this claim on behalf of the Nationwide Class, or, alternatively, the New Jersey Class.

93.     Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

94.     The New Jersey Consumer Fraud Act ("NJCFA") prohibits "the act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission

of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise . . . ." N.J.S.A. § 56:8-2.

95.     J&J engaged in such unconscionable commercial practices, deceptions, frauds, false pretenses, false promises, misrepresentations, or knowing concealment by failing to disclose the presence of benzene in the Sunscreen Products, and by making affirmative statements regarding the ingredients, safety, and health benefits of the Sunscreen Products in violation of the NJCFA.

96.     Plaintiffs and members of the Classes suffered injury in fact and lost money as a result of J&J's conduct. J&J falsely and misleadingly represented that Sunscreen Products were healthy and safe for consumers, while omitting to disclose that they contained the carcinogen benzene. The presence of benzene rendered the Sunscreen Products unsafe, adulterated, and misbranded. Had Plaintiffs and members of the Classes known the truth about the Sunscreen Products, they would not have purchased the Sunscreen Products.

97.     J&J's actions are deceptive and in clear violation of NJCFA, entitling Plaintiffs and members of the Classes to treble damages and relief under N.J.S.A. § 56:8-19.

98.     Accordingly, Plaintiffs seek all damages, injunctive and equitable relief, and attorneys' fees and costs available under the NJCFA.

## SECOND CAUSE OF ACTION
Violations of State Consumer Protection Laws
(On Behalf of the State-Specific Classes)

**A.     Violation of the California Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, *et seq.*) (On Behalf of the California Class)**

99.     Plaintiffs incorporate by reference the allegations in the preceding paragraphs as if fully set forth herein.

100.    Plaintiff Stolzenbach brings this cause of action on behalf of herself and the California Class.

101.    J&J's conduct as alleged herein constitutes unlawful, unfair, and/or fraudulent business acts or practices as prohibited by the California Unfair Competition Law ("UCL").

102.    J&J's acts and practices are unlawful under the UCL because J&J's manufacturing, marketing, distributing, and selling of the Sunscreen Products violates California's Sherman Food, Drug, and Cosmetics Law, Cal. Health & Safety Code § 111225, *et seq*. ("Sherman Law").

103.    The Sherman Law provides that a drug is misbranded if its labeling is false or misleading in any way and further provides that it is unlawful for any person to misbrand any drug. Cal. Health & Safety Code §§ 111330, 111440, 111445.

104.    J&J is a "person" within the meaning of the Sherman Act. Cal. Health & Safety Code § 109995.

105.    J&J's acts and practices are also unlawful because they violate California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.* ("CLRA") and False Advertising Law, Cal. Bus. & Prof. Code. § 17500, *et seq.*, which forbids deceptive, untrue or misleading advertising.

106.    J&J's marketing of the Sunscreen Products deceived reasonable consumers throughout California. Indeed, Plaintiff Stolzenbach and the members of the California Class were deceived regarding the risks of the Sunscreen Products, as J&J's marketing of the Sunscreen Products nowhere disclosed that the Sunscreen Products may contain benzene, but instead portrayed the Sunscreen Products as safe and healthy.

107.    J&J's acts and practices are unfair under the UCL because California has a strong public policy against deceptive marketing of consumer products. J&J's acts and practices are also

unfair in that they are immoral, unethical, oppressive, unscrupulous and/or substantially injurious to consumers. The gravity of the harm of J&J's conduct to Plaintiff Stolzenbach and the members of the California Class is significant, and there is no corresponding benefit resulting from such conduct.

108.    J&J's acts and practices are also fraudulent within the meaning of the UCL. J&J sold large quantities of the Sunscreen Products to members of the California Class, while failing to disclose that the Sunscreen Products contained benzene. J&J's acts and practices were likely to, and did, deceive members of the public, including Plaintiff Stolzenbach and members of the California Class.

109.    Plaintiff Stolzenbach and the members of the California Class have lost money and property and otherwise suffered economic loss as a result of J&J's conduct in violation of the UCL. J&J's deception caused Plaintiff Stolzenbach and the members of the California Class to purchase the Sunscreen Products. Had they known and understood the true nature and quality of the Sunscreen Products, Plaintiff Stolzenbach and the members of the California Class would not have purchased the Sunscreen Products. As a result, they surrendered in a transaction more, and acquired in a transaction less, than they otherwise would have.

110.    Plaintiff Stolzenbach and the California Class members also seek injunctive relief. They do not have an adequate remedy at law because many of the resulting injuries are reoccurring, and Plaintiff Stolzenbach and the California Class members will be forced to bring multiple lawsuits to rectify the same conduct. If an injunction is not issued, Plaintiff Stolzenbach and the California Class members will suffer irreparable injury.

111.    As a result of the business practices described above, Business and Professions Code § 17203 entitles Plaintiff Stolzenbach and the members of the California Class to an order

enjoining such future conduct on the part of J&J and such other solely injunctive or declaratory relief which may be necessary as a result of its wrongful conduct.

    **B.**    **Violation of the California Consumers Legal Remedies Act (Cal. Civ. Code § 1750, *et seq.*) (On Behalf of the California Class)**

    112.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs as if fully set forth herein.

    113.    Plaintiff Stolzenbach brings this cause of action on behalf of herself and the California Class.

    114.    This cause of action is brought pursuant to the California CLRA, Cal. Civ. Code § 1750, *et seq*.

    115.    Plaintiff Stolzenbach and the members of the California Class are "consumers" as that term is defined by the CLRA in Cal. Civ. Code § 1761(d).

    116.    J&J's actions, representations, and conduct, as described above, and each of them, have violated and continue to violate the CLRA, because they extend to transactions that are intended to result, or which have resulted, in the sale or lease of goods to consumers.

    117.    The Sunscreen Products that Plaintiff Stolzenbach and the members of the California Class purchased from J&J are "goods" within the meaning of Cal. Civ. Code § 1761(a).

    118.    J&J's acts and practices constitute deceptive methods of competition, in that it misrepresents the safety of the Sunscreen Products and omits that the Sunscreen Products contain a dangerous carcinogen, in violation of Cal. Civ. Code § 1770(a)(5).

    119.    J&J's acts and practices constitute deceptive methods of competition, in that J&J misrepresents the particular standard, quality, or grade of the Sunscreen Products, in violation of Cal. Civ. Code § 1770(a)(7).

120.    J&J's acts and practices constitute deceptive methods of competition, in that J&J represents that the Sunscreen Products have been supplied in accordance with a previous representation when they have not, in violation of Cal. Civ. Code § 1770(a)(16).

121.    Plaintiff Stolzenbach and the California Class request that this Court enjoin J&J from continuing to employ the unlawful methods, acts, and practices alleged herein, and any other solely declaratory or injunctive relief the Court deems proper pursuant to Cal. Civ. Code § § 1780 and 1781. If J&J is not restrained from engaging in these types of practices on the future, Plaintiff Stolzenbach and the members of the California Class will continue to suffer harm.

### C.    Violation of the Colorado Consumer Protection Act (Colo. Rev. Stat. Ann. § 6-1-101, *et seq.*) (On Behalf of the Colorado Class)

122.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs as if fully set forth herein.

123.    Plaintiff Stacey Vaidis asserts this claim on behalf of herself and the Colorado Class.

124.    J&J, Plaintiff Vaidis and the members of the Colorado Class are "[p]erson[s]" within the meaning of Colo. Rev. Stat. Ann. § 6-1-102(6).

125.    The Colorado Consumer Protection Act ("Colorado CPA") prohibits unfair, unconscionable, and deceptive acts or practices "in the course of the person's business, vocation, or occupation." Colo. Rev. Stat. Ann. § 6-1-105(1).

126.    The Colorado CPA makes unlawful specific acts, including:

- "[r]epresent[ing] that goods . . . are of a particular standard, quality, or grade, or that goods are of a particular style or model, if he knows or should know that they are of another" (Colo. Rev. Stat. Ann. § 6-1-105(1)(g));

- "[a]dvertis[ing] goods . . . with intent not to sell them as advertised" (Colo. Rev. Stat. Ann. § 6-1-105(1)(i));

- "[f]ails to disclose material information concerning goods . . . which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction" (Colo. Rev. Stat. Ann. § 6-1-105(1)(u)); and

- "[e]ither knowingly or recklessly engage[ing] in any unfair, unconscionable, deceptive, deliberately misleading, false, or fraudulent act or practice" (Colo. Rev. Stat. Ann. § 6-1-105(1)(kkk)).

127.   J&J is engaged in the practice of manufacturing, marketing, distributing, selling, and otherwise placing into the stream of commerce the Sunscreen Products, which constitutes trade and commerce under the Colorado CPA.

128.   J&J, directly or through its agents, employees, and/or subsidiaries, violated the Colorado CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding the Sunscreen Products, including that such products contained benzene, as detailed above. Such conduct was bad faith conduct under the Colorado CPA.

129.   Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding the Sunscreen Products, including that such products were unreasonably dangerous and not fit to be used for their intended purpose, as detailed above, J&J engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Colorado CPA, including:

- representing that the Sunscreen Products have characteristics, uses, benefits, and qualities which they do not have;

- representing that the Sunscreen Products are of a particular standard, quality, and grade when they are not;

- advertising the Sunscreen Products with the intent not to sell them as advertised; and

- engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

130.   J&J's misrepresentations and omissions regarding the unreasonably dangerous nature of the Sunscreen Products were disseminated to Plaintiff Vaidis and the Colorado Class members in a uniform manner.

131.   J&J's unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff Vaidis and members of the Colorado Class, about the unreasonably dangerous nature of the Sunscreen Products.

132.   The facts regarding the Sunscreen Products that J&J knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff Vaidis and the Colorado Class, who consider such facts to be important to their purchase decisions with respect to Sunscreen Products.

133.   Plaintiff Vaidis and members of the Colorado Class relied on J&J's misrepresentations, omissions, and concealments with respect to the Sunscreen Products by purchasing and continuing to purchase the Sunscreen Products after J&J's misrepresentations, omissions, and concealments were made.

134.   Plaintiff Vaidis and members of the Colorado Class had no way of discerning that J&J's representations were false and misleading, or otherwise learning the facts that J&J had concealed or failed to disclose. Plaintiff Vaidis and members of the Colorado Class did not, and could not, unravel J&J's deception on their own.

135.   J&J had an ongoing duty to Plaintiff Vaidis and members of the Colorado Class to refrain from unfair and deceptive practices under the Colorado CPA in the course of their business.

Specifically, J&J owed Plaintiff Vaidis and members of the Colorado Class a duty to disclose all material facts regarding the Sunscreen Products, including that such products were unreasonably dangerous and not fit to be used for their intended purpose. J&J possessed exclusive knowledge of such facts but intentionally concealed them from Plaintiff Vaidis and members of the Colorado Class, and/or made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

136.    Plaintiff Vaidis and members of the Colorado Class suffered injury in fact and lost money as a result of J&J's conduct. J&J falsely and misleadingly represented that Sunscreen Products were healthy and safe for consumers, while omitting to disclose that they contained the carcinogen benzene. The presence of benzene rendered the Sunscreen Products unsafe, adulterated, and misbranded. Had Plaintiff Vaidis and members of the Colorado Class known the truth about the Sunscreen Products, they would not have purchased the Sunscreen Products.

137.    J&J's violations present a continuing risk to Plaintiff Vaidis and members of the Colorado Class, as well as to the general public. J&J's unlawful acts and practices alleged herein affect the public interest.

138.    As a result of J&J's violations of the Colorado CPA, as alleged herein, Plaintiff Vaidis and members of the Colorado Class seek an order enjoining J&J's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Colorado CPA.

**D.    Violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq*. (On Behalf of the Florida Class)**

139.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs as if fully set forth herein.

140.    Plaintiff Trainor asserts this claim on behalf of herself and the Florida Class.

141.    The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") renders unlawful unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce. Fla. Stat. § 501.204.

142.    Among other purposes, FDUTPA is intended "[t]o protect the consuming public and legitimate business enterprises from those who engaged in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202.

143.    J&J is engaged in the practice of manufacturing, marketing, distributing, selling, and otherwise placing into the stream of commerce the Sunscreen Products, which constitutes trade and commerce under the FDUTPA.

144.    Plaintiff Trainor and the members of the Florida Class suffered injury in fact and lost money as a result of J&J's conduct. J&J falsely and misleadingly represented that Sunscreen Products were healthy and safe for consumers, while omitting to disclose that they contained the carcinogen benzene. The presence of benzene rendered the Sunscreen Products unsafe, adulterated, and misbranded. Had Plaintiff Trainor and members of the Florida Class known the truth about the Sunscreen Products, they would not have purchased the Sunscreen Products.

145.    J&J's actions are deceptive and in clear violation of FDUTPA, entitling Plaintiff Trainor and the members of the Florida Class to damages and relief under Fla. Stat. §§ 501.201-213.

146.    Accordingly, Plaintiff Trainor and the Florida Class seek all damages, injunctive and equitable relief, and attorneys' fees and costs available under the FDUTPA.

E.    **Violation of the North Carolina Unfair and Deceptive Trade Practices Act (N.C. Gen. Stat. Ann. § 75-1.1, *et seq.*) (On Behalf of the North Carolina Class)**

147.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs as if fully set forth herein.

148.    Plaintiff Melquist brings this cause of action on behalf of himself and the North Carolina Class.

149.    J&J was and is engaged in "commerce" within the meaning of N.C. Gen. Stat. Ann. § 75-1.1(b).

150.    The North Carolina Unfair and Deceptive Trade Practices Act ("North Carolina UDTPA") prohibits "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce," N.C. Gen. Stat. Ann. § 75-1.1(a), and provides a private right of action for any person injured "by reason of any act or thing done by any other person, firm or corporation in violation of" the law. N.C. Gen. Stat. Ann. § 75-16.

151.    In the course of its business, J&J, directly or through its agents, employees, and/or subsidiaries, violated the North Carolina UDTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding the Sunscreen Products, including that such products were unreasonably dangerous and not fit to be used for their intended purpose, as detailed above.

152.    Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding the Sunscreen Products, including that such products were unreasonably dangerous and not fit to be used for their intended purpose, as detailed above, J&J engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the North Carolina UDTPA.

153.    J&J's misrepresentations and omissions regarding the unreasonably dangerous nature of the Sunscreen Products were disseminated to Plaintiff Melquist and the North Carolina Class members in a uniform manner.

154.    J&J's unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff Melquist and the North Carolina Class members, about the unreasonably dangerous nature of the Sunscreen Products.

155.    The facts regarding the Sunscreen Products that J&J knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff Melquist and the members of the North Carolina Class, who consider such facts to be important to their purchase decisions with respect to the Sunscreen Products.

156.    Plaintiff Melquist and the members of the North Carolina Class had no way of discerning that J&J's representations were false and misleading, or otherwise learning the facts that J&J had concealed or failed to disclose. Plaintiff Melquist and the members of the North Carolina Class did not, and could not, unravel J&J's deception on their own.

157.    J&J had an ongoing duty to Plaintiff Melquist and the members of the North Carolina Class to refrain from unfair and deceptive practices under the North Carolina UDTPA in the course of its business. Specifically, J&J owed Plaintiff Melquist and members of the North Carolina Class a duty to disclose all material facts regarding the Sunscreen Products, including that such products were unreasonably dangerous and not fit to be used for their intended purpose. J&J possessed exclusive knowledge of such facts but intentionally concealed them from Plaintiff

Melquist and the members of the North Carolina Class, and/or made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

158.    Plaintiff Melquist and the members of the North Carolina Class suffered injury in fact and lost money as a result of J&J's conduct. J&J falsely and misleadingly represented that Sunscreen Products were healthy and safe for consumers, while omitting to disclose that they contained the carcinogen benzene. The presence of benzene rendered the Sunscreen Products unsafe, adulterated, and misbranded. Had Plaintiff Melquist and members of the North Carolina Class known the truth about the Sunscreen Products, they would not have purchased the Sunscreen Products.

159.    J&J's violations present a continuing risk to Plaintiff Melquist and the North Carolina Class members, as well as to the general public. J&J's unlawful acts and practices alleged herein affect the public interest.

160.    As a result of J&J's violations of the North Carolina UDTPA, as alleged herein, Plaintiff Melquist and the North Carolina Class members seek an order enjoining J&J's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the North Carolina UDTPA.

      **F.**    **Violation of the Oregon Unlawful Trade Practices Act (Or. Rev. Stat. Ann. § 646.605, *et seq.*) (On Behalf of the Oregon Class)**

161.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs as if fully set forth herein.

162.    Plaintiff Bodine brings this cause of action on behalf of himself and the Oregon Class.

163.    J&J, Plaintiff Bodine and members of the Oregon Class are "[p]erson[s]" within the meaning of Or. Rev. Stat. Ann. § 646.605(4).

164.    The Sunscreen Products are "goods" within the meaning of Or. Rev. Stat. Ann. §

646.605(6).

165.    J&J was and is engaged in "[t]rade" or "commerce" within the meaning of Or. Rev.

Stat. Ann. § 646.605(8).

166.    The Oregon Unlawful Trade Practices Act ("Oregon UTPA") prohibits "unlawful

practice . . . in the course of the person's business." Or. Rev. Stat. Ann. § 646.608(1).

167.    The Oregon UTPA makes unlawful specific acts, including:

- "[r]epresent[ing] that . . . goods . . . have . . . characteristics, ingredients, uses, benefits, quantities or qualities that the . . . goods . . . do not have" (Or. Rev. Stat. Ann. § 646.608(1)(e));

- "[r]epresent[ing] that . . . goods . . . are of a particular standard, quality, or grade, or that . . . goods are of a particular style or model, if the . . . goods . . . are of another" (Or. Rev. Stat. Ann. § 646.608(1)(g));

- "[a]dvertis[ing] . . . goods . . . with intent not to provide the . . . goods . . . as advertised" (Or. Rev. Stat. Ann. § 646.608(1)(i)); and

- "[e]ngag[ing] in any other unfair or deceptive conduct in trade or commerce" (Or. Rev. Stat. Ann. § 646.608(1)(u)).

168.    In the course of its business, J&J, directly or through its agents, employees, and/or

subsidiaries, violated the Oregon UTPA by knowingly and intentionally misrepresenting, omitting,

concealing, and failing to disclose material facts regarding the Sunscreen Products, including that

such products were unreasonably dangerous and not fit to be used for their intended purpose, as

detailed above.

169.    Specifically, by knowingly and intentionally misrepresenting, omitting, concealing,

and failing to disclose material facts regarding the Sunscreen Products, including that such

products were unreasonably dangerous and not fit to be used for their intended purpose, as detailed

above, J&J engaged in one or more unfair or deceptive acts or practices in the conduct of trade or

commerce, in violation of the Oregon UTPA, including:

- representing that the Sunscreen Products have characteristics, uses, benefits, and qualities which they do not have;

- representing that the Sunscreen Products are of a particular standard, quality, and grade when they are not;

- advertising the Sunscreen Products with the intent not to sell them as advertised; and

- engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce.

170.    J&J's misrepresentations and omissions regarding the unreasonably dangerous nature of the Sunscreen Products were disseminated to Plaintiff Bodine and members of the Oregon Class in a uniform manner.

171.    J&J's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff Bodine and members of the Oregon Class, about the unreasonably dangerous nature of the Sunscreen Products.

172.    The facts regarding the Sunscreen Products that J&J knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff Bodine and members of the Oregon Class, who consider such facts to be important to their purchase decisions with respect to the Sunscreen Products.

173.    Plaintiff Bodine and members of the Oregon Class had no way of discerning that J&J's representations were false and misleading, or otherwise learning the facts that J&J had concealed or failed to disclose. Plaintiff Bodine and members of the Oregon Class did not, and could not, unravel J&J's deception on their own.

174.    J&J had an ongoing duty to Plaintiff Bodine and members of the Oregon Class to refrain from unfair and deceptive practices under the Oregon UTPA in the course of their business. Specifically, J&J owed Plaintiff Bodine and members of the Oregon Class a duty to disclose all material facts regarding the Sunscreen Products, including that such products were unreasonably dangerous and not fit to be used for their intended purpose. J&J possessed exclusive knowledge of such facts but intentionally concealed them from Plaintiff Bodine and members of the Oregon Class, and/or made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

175.    Plaintiff Bodine and members of the Oregon Class suffered injury in fact and lost money as a result of J&J's conduct. J&J falsely and misleadingly represented that Sunscreen Products were healthy and safe for consumers, while omitting to disclose that they contained the carcinogen benzene. The presence of benzene rendered the Sunscreen Products unsafe, adulterated, and misbranded. Had Plaintiff Bodine and members of the Oregon Class known the truth about the Sunscreen Products, they would not have purchased the Sunscreen Products.

176.    J&J's violations present a continuing risk to Plaintiff Bodine and members of the Oregon Class, as well as to the general public. J&J's unlawful acts and practices alleged herein affect the public interest.

177.    As a result of J&J's violations of the Oregon UTPA, as alleged herein, Plaintiff Bodine and members of the Oregon Class seek an order enjoining J&J's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Oregon UTPA.

G.     **Violation of the South Carolina Unfair Trade Practices Act (S.C. Code Ann. § 39-5-10, *et seq*.) (On Behalf of the South Carolina Class)**

178.     Plaintiffs incorporate by reference the allegations in the preceding paragraphs as if fully set forth herein.

179.     Plaintiff Hall brings this cause of action on behalf of himself and the South Carolina Class.

180.     J&J, Plaintiff Hall and the members of the South Carolina Class are "[p]erson[s]" within the meaning of S.C. Code Ann. § 39-5-10(a).

181.     J&J is and was engaged in "[t]rade" or "commerce" within the meaning of S.C. Code Ann. § 39-5-10(b).

182.     The South Carolina Unfair Trade Practices Act ("South Carolina UTPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." S.C. Code Ann. § 39-5-20(a).

183.     In the course of its business, J&J, directly or through its agents, employees, and/or subsidiaries, violated the South Carolina UTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding the Sunscreen Products, including that such products were unreasonably dangerous and not fit to be used for their intended purpose, as detailed above.

184.     Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding the Sunscreen Products, including that such products were unreasonably dangerous and not fit to be used for their intended purpose, as detailed above, J&J engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the South Carolina UTPA.

185.     J&J's misrepresentations and omissions regarding the unreasonably dangerous nature of the Sunscreen Products were disseminated to Plaintiff Hall and the South Carolina Class members in a uniform manner.

186.     J&J's unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff Hall and the members of the South Carolina Class, about the unreasonably dangerous nature of the Sunscreen Products.

187.     The facts regarding the Sunscreen Products that J&J knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff Hall and the members of the South Carolina Class, who consider such facts to be important to their purchase decisions with respect to the Sunscreen Products.

188.     Plaintiff Hall and the members of the South Carolina Class had no way of discerning that J&J's representations were false and misleading, or otherwise learning the facts that J&J had concealed or failed to disclose. Plaintiff Hall and the members of the South Carolina Class did not, and could not, unravel J&J's deception on their own.

189.     J&J had an ongoing duty to Plaintiff Hall and the members of the South Carolina Class to refrain from unfair and deceptive practices under the South Carolina UTPA in the course of their business. Specifically, J&J owed Plaintiff Hall and the members of the South Carolina Class a duty to disclose all material facts regarding the Sunscreen Products, including that such products were unreasonably dangerous and not fit to be used for their intended purpose. J&J possessed exclusive knowledge of such facts but intentionally concealed them from Plaintiff Hall

and the members of the South Carolina Class, and/or made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

190.     Plaintiff Hall and the members of the South Carolina Class suffered injury in fact and lost money as a result of J&J's conduct. J&J falsely and misleadingly represented that the Sunscreen Products were healthy and safe for consumers, while omitting to disclose that they contained the carcinogen benzene. The presence of benzene rendered the Sunscreen Products unsafe, adulterated, and misbranded. Had Plaintiff Hall and the members of the South Carolina Class known the truth about the Sunscreen Products, they would not have purchased the Sunscreen Products.

191.     J&J's violations present a continuing risk to Plaintiff Hall and the members of the South Carolina Class, as well as to the general public. J&J's unlawful acts and practices complained of herein affect the public interest.

192.     As a result of J&J's violations of the South Carolina UTPA, as alleged herein, Plaintiff Hall and the members of the South Carolina Class seek an order enjoining J&J's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the South Carolina UTPA.

**H.     Violation of the Tennessee Consumer Protection Act of 1977 (Tenn. Code Ann. § 47-18-101, et *seq.*) (On Behalf of the Tennessee Class)**

193.     Plaintiffs incorporate by reference the allegations in the preceding paragraphs as if fully set forth herein.

194.     Plaintiff Johnson brings this cause of action on behalf of herself and the Tennessee Class.

195.     J&J, Plaintiff Johnson and the members of the Tennessee Class are "[p]erson[s]" within the meaning of Tenn. Code Ann. § 47-18-103(14).

196.     Plaintiff Johnson and the members of the Tennessee Class are "[c]onsumer[s]" within the meaning of Tenn. Code Ann. § 47-18-103(3).

197.     The Sunscreen Products are "[g]oods" within the meaning of Tenn. Code Ann. § 47-18-103(8).

198.     J&J was and is engaged in "[t]rade" or "commerce" or "consumer transaction[s]" within the meaning of Tenn. Code Ann. § 47-18-103(20).

199.     The Tennessee Consumer Protection Act of 1977 ("Tennessee CPA") prohibits "[u]nfair or deceptive acts or practices affecting the conduct of any trade or commerce." Tenn. Code Ann. § 47-18-104(a).

200.     The Tennessee CPA makes unlawful specific acts, including:

- "[r]epresenting that goods . . . have . . . characteristics, ingredients, uses, benefits, or quantities that they do not have" (Tenn. Code Ann. § 47-18-104(b)(5));

- "[r]epresenting that goods . . . are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another" (Tenn. Code Ann. § 47-18-104(b)(7)); and

- "[a]dvertising goods . . . with intent not to sell them as advertised" (Tenn. Code Ann. § 47-18-104(b)(9)).

201.     In the course of its business, J&J, directly or through its agents, employees, and/or subsidiaries, violated the Tennessee CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding Sunscreen Products, including that such products were unreasonably dangerous and not fit to be used for their intended purpose, as detailed above.

202.     Specifically, by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding the Sunscreen Products, including that such products were unreasonably dangerous and not fit to be used for their intended purpose, as detailed

above, J&J engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Tennessee CPA, including:

- representing that the Sunscreen Products have characteristics, uses, benefits, and qualities which they do not have;

- representing that the Sunscreen Products are of a particular standard, quality, and grade when they are not;

- and advertising the Sunscreen Products with the intent not to sell them as advertised.

203.    J&J's misrepresentations and omissions regarding the unreasonably dangerous nature of Sunscreen Products were disseminated to Plaintiff Johnson and the members of the Tennessee Class in a uniform manner.

204.    J&J's unfair or deceptive acts or practices, including their misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff Johnson and the members of the Tennessee Class, about the unreasonably dangerous nature of the Sunscreen Products.

205.    The facts regarding the Sunscreen Products that J&J knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff Johnson and the members of the Tennessee Class, who consider such facts to be important to their purchase decisions with respect to the Sunscreen Products.

206.    Plaintiff Johnson and the members of the Tennessee Class had no way of discerning that J&J's representations were false and misleading, or otherwise learning the facts that J&J had concealed or failed to disclose. Plaintiff Johnson and the members of the Tennessee Class did not, and could not, unravel J&J's deception on their own.

207.     J&J had an ongoing duty to Plaintiff Johnson and the members of the Tennessee Class to refrain from unfair and deceptive practices under the Tennessee CPA in the course of their business. Specifically, J&J owed Plaintiff Johnson and members of the Tennessee Class a duty to disclose all material facts regarding the Sunscreen Products, including that such products were unreasonably dangerous and not fit to be used for their intended purpose. J&J possessed exclusive knowledge of such facts but intentionally concealed them from Plaintiff Johnson and members of the Tennessee Class, and/or made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

208.     Plaintiff Johnson and the members of the Tennessee Class suffered injury in fact and lost money as a result of J&J's conduct. J&J falsely and misleadingly represented that Sunscreen Products were healthy and safe for consumers, while omitting to disclose that they contained the carcinogen benzene. The presence of benzene rendered the Sunscreen Products unsafe, adulterated, and misbranded. Had Plaintiff Johnson and members of the Tennessee Class known the truth about the Sunscreen Products, they would not have purchased the Sunscreen Products.

209.     J&J's violations present a continuing risk to Plaintiff Johnson and the members of the Tennessee Class, as well as to the general public. J&J's unlawful acts and practices alleged herein affect the public interest.

210.     As a result of J&J's violations of the Tennessee CPA, as alleged herein, Plaintiff Johnson and the members of the Tennessee Class seek an order enjoining J&J's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Tennessee CPA.

I.      **Violation of the Washington Consumer Protection Act (Wash. Rev. Code Ann.
        § 19.86.010, *et seq.*) (On Behalf of the Washington Class)**

211.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs as if
fully set forth herein.

212.    Plaintiff Ellingson brings this cause of action on behalf of herself and the
Washington Class.

213.    J&J, Plaintiff Ellingson and the Washington Class are "[p]erson[s]" within the
meaning of Wash. Rev. Code Ann. § 19.86.010(1).

214.    The Sunscreen Products are "[a]ssets" within the meaning of Wash. Rev. Code
Ann. § 19.86.010(3).

215.    J&J was and is engaged in "[t]rade" or "commerce" within the meaning of Wash.
Rev. Code Ann. § 19.86.010(2).

216.    The Washington Consumer Protection Act ("Washington CPA") prohibits "[u]nfair
methods of competition and unfair or deceptive acts or practices in the conduct of any trade or
commerce." Wash. Rev. Code Ann. § 19.86.020.

217.    In the course of its business, J&J, directly or through its agents, employees, and/or
subsidiaries, violated the Washington CPA by knowingly and intentionally misrepresenting,
omitting, concealing, and failing to disclose material facts regarding the Sunscreen Products,
including that such products were unreasonably dangerous and not fit to be used for their intended
purpose, as detailed above.

218.    Specifically, by knowingly and intentionally misrepresenting, omitting, concealing,
and failing to disclose material facts regarding the Sunscreen Products, including that such
products were unreasonably dangerous and not fit to be used for their intended purpose, as detailed

above, J&J engaged in one or more unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of the Washington CPA.

219.   J&J's misrepresentations and omissions regarding the unreasonably dangerous nature of the Sunscreen Products were disseminated to Plaintiff Ellingson and members of the Washington Class in a uniform manner.

220.   J&J's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, as alleged herein, had a tendency or capacity to mislead and create a false impression in consumers' minds, and were likely to and, in fact, did deceive reasonable consumers, including Plaintiff Ellingson and members of the Washington Class, about the unreasonably dangerous nature of the Sunscreen Products.

221.   The facts regarding the Sunscreen Products that J&J knowingly and intentionally misrepresented, omitted, concealed, and failed to disclose would be considered material by a reasonable consumer, and they were, in fact, material to Plaintiff Ellingson and members of the Washington Class, who consider such facts to be important to their purchase decisions with respect to the Sunscreen Products.

222.   Plaintiff Ellingson and members of the Washington Class had no way of discerning that J&J's representations were false and misleading, or otherwise learning the facts that J&J had concealed or failed to disclose. Plaintiff Ellingson and members of the Washington Class did not, and could not, unravel J&J's deception on their own.

223.   J&J had an ongoing duty to Plaintiff Ellingson and members of the Washington Class to refrain from unfair and deceptive practices under the Washington CPA in the course of their business. Specifically, J&J owed Plaintiff Ellingson and members of the Washington Class a duty to disclose all material facts regarding the Sunscreen Products, including that such products

were unreasonably dangerous and not fit to be used for their intended purpose. J&J possessed exclusive knowledge of such facts but intentionally concealed them from Plaintiff Ellingson and members of the Washington Class, and/or made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

224. Plaintiff Ellingson and members of the Washington Class suffered injury in fact and lost money as a result of J&J's conduct. J&J falsely and misleadingly represented that Sunscreen Products were healthy and safe for consumers, while omitting to disclose that they contained the carcinogen benzene. The presence of benzene rendered the Sunscreen Products unsafe, adulterated, and misbranded. Had Plaintiff Ellingson and members of the Washington Class known the truth about the Sunscreen Products, they would not have purchased the Sunscreen Products.

225. J&J's violations present a continuing risk to Plaintiff Ellingson and members of the Washington Class, as well as to the general public. J&J's unlawful acts and practices alleged herein affect the public interest.

226. As a result of J&J's violations of the Washington CPA, as alleged herein, Plaintiff Ellingson and members of the Washington Class seek an order enjoining J&J's unfair or deceptive acts or practices and awarding actual damages, costs, attorneys' fees, and any other just and proper relief available under the Washington CPA.

**THIRD CAUSE OF ACTION**
Breach of Warranty — Express Warranty
(On Behalf Of The State-Specific Classes)

**A.  Breach of Express Warranty (Cal. Com. Code § 2313) (On Behalf of the California Class)**

227. Plaintiffs incorporate by reference the allegations in the preceding paragraphs as if fully set forth herein.

228.    Plaintiff Stolzenbach brings this cause of action on behalf of herself and the California Class.

229.    J&J is, and at all relevant times was, a "merchant" with respect to the Sunscreen Products within the meaning of Cal. Com. Code § 2313 and a "seller" of the Sunscreen Products within the meaning of Cal. Com. Code § 2313.

230.    Plaintiff Stolzenbach and the members of the California Class are, and at all relevant times were, "buyers" within the meaning of Cal. Com. Code § 2313.

231.    In connection with their sale of the Sunscreen Products, by and through statements in labels, publications, and other written materials intended for consumers and the general public, J&J made certain express affirmations of fact and/or promises relating to the Sunscreen Products to Plaintiff Stolzenbach and the members of the California Class, as alleged herein, including that such products were safe for human consumption and fit to be used for their intended purpose. These express affirmations of fact and/or promises include incomplete warnings and instructions that purport, but fail, to include the complete array of risks associated with use of and/or exposure to the Sunscreen Products.

232.    J&J advertised, labeled, marketed, and promoted the Sunscreen Products with such express affirmations of fact and/or promises in such a way as to induce their purchase or use by Plaintiff Stolzenbach and the members of the California Class, thereby making an express warranty that the Sunscreen Products would conform to the representations.

233.    J&J's affirmations of fact and/or promises about the Sunscreen Products, as set forth herein, constituted affirmations of fact or promises made by the seller to the buyer, which related to the goods and became part of the basis of the bargain, thus creating an express warranty that the goods would conform to the representations.

234.    The express warranties J&J created with respect to the Sunscreen Products were material to reasonable consumers, including Plaintiff Stolzenbach and the members of the California Class, who were intended beneficiaries of J&J's express warranties and who justifiably relied on J&J's express warranties in connection with their decision to purchase the Sunscreen Products. Specifically, Plaintiff Stolzenbach and the members of the California Class detrimentally relied on the express warranties and representations of J&J concerning the safety and/or risk profile of the Sunscreen Products in deciding to purchase the product. Plaintiff Stolzenbach and the California Class members reasonably relied upon J&J to disclose known defects, risks, dangers, and side effects of the Sunscreen Products. Plaintiff Stolzenbach and the members of the California Class would not have purchased or used the Sunscreen Products had J&J properly disclosed the risks associated with the product, either through advertising, labeling, or any other form of disclosure.

235.    Despite the express warranties J&J created with respect to the Sunscreen Products, J&J delivered Sunscreen Products to Plaintiff Stolzenbach and the members of the California Class that did not conform to J&J's express warranties in that such products were dangerous and unfit for use, did not contain labels representing the true and adequate nature of the risks associated with their use, and were not merchantable or safe for their intended, ordinary, and foreseeable use and purpose. Specifically, J&J breached the express warranties in the following ways:

- J&J represented through their labeling, advertising, and marketing materials that the Sunscreen Products were safe, and intentionally withheld and concealed information about the risks of serious injury associated with use of the Sunscreen Products and by expressly limiting the risks associated with use within their warnings and labels; and

- J&J represented that the Sunscreen Products were safe for use and intentionally concealed information that demonstrated that they had carcinogenic properties, and that the Sunscreen Products, therefore, were not safer than alternatives available on the market.

236.     J&J had sole access to material facts concerning the nature of the risks associated with the Sunscreen Products, as expressly stated within their warnings and labels, and knew that consumers and users such as Plaintiff Stolzenbach and the members of the California Class could not have reasonably discovered that the risks expressly included in the Sunscreen Products' warnings and labels were inadequate and inaccurate.

237.     As a direct and proximate result of J&J's breaches of express warranties, as alleged herein, Plaintiff Stolzenbach and the members of the California Class sustained an economic loss in an amount to be proven at trial.

238.     As a result of J&J's breaches of express warranties, as alleged herein, Plaintiff Stolzenbach and the members of the California Class seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**B.     Breach of Express Warranty (Colo. Rev. Stat. Ann. § 4-2-313) (On Behalf of the Colorado Class)**

239.     Plaintiffs incorporate by reference the allegations in the preceding paragraphs as if fully set forth herein.

240.     Plaintiff Vaidis brings this cause of action on behalf of herself and the Oregon Class.

241.     J&J is, and at all relevant times was, a "merchant" with respect to the Sunscreen Products within the meaning of Colo. Rev. Stat. Ann. § 4-2-313 and a "seller" of the Sunscreen Products within the meaning of Colo. Rev. Stat. Ann. § 4-2-313.

242.     Plaintiff Vaidis and the members of the Colorado Class are, and at all relevant times were, "buyers" within the meaning of Colo. Rev. Stat. Ann. § 4-2-313.

243. In connection with their sale of the Sunscreen Products, by and through statements in labels, publications, and other written materials intended for consumers and the general public, J&J made certain express affirmations of fact and/or promises relating to the Sunscreen Products to Plaintiff Vaidis and the members of the Colorado Class, as alleged herein, including that such products were safe for human consumption and fit to be used for their intended purpose. These express affirmations of fact and/or promises include incomplete warnings and instructions that purport, but fail, to include the complete array of risks associated with use of and/or exposure to the Sunscreen Products.

244. J&J advertised, labeled, marketed, and promoted the Sunscreen Products with such express affirmations of fact and/or promises in such a way as to induce their purchase or use by Plaintiff Vaidis and the members of the Colorado Class, thereby making an express warranty that the Sunscreen Products would conform to the representations.

245. J&J's affirmations of fact and/or promises about the Sunscreen Products, as set forth herein, constituted affirmations of fact or promises made by the seller to the buyer, which related to the goods and became part of the basis of the bargain, thus creating an express warranty that the goods would conform to the representations.

246. Despite the express warranties J&J created with respect to the Sunscreen Products, J&J delivered Sunscreen Products to Plaintiff Vaidis and the members of the Colorado Class that did not conform to J&J's express warranties in that such products were dangerous and unfit for use, did not contain labels representing the true and adequate nature of the risks associated with their use, and were not merchantable or safe for their intended, ordinary, and foreseeable use and purpose. Specifically, J&J breached the express warranties in the following ways:

- J&J represented through their labeling, advertising, and marketing materials that the Sunscreen Products were safe, and intentionally withheld and concealed

information about the risks of serious injury associated with use of the Sunscreen Products and by expressly limiting the risks associated with use within their warnings and labels; and

- J&J represented that the Sunscreen Products were safe for use and intentionally concealed information that demonstrated that they had carcinogenic properties, and that the Sunscreen Products, therefore, were not safer than alternatives available on the market.

247.    J&J had sole access to material facts concerning the nature of the risks associated with the Sunscreen Products, as expressly stated within their warnings and labels, and knew that consumers and users such as Plaintiff Vaidis and the members of the Colorado Class could not have reasonably discovered that the risks expressly included in the Sunscreen Products' warnings and labels were inadequate and inaccurate.

248.    As a direct and proximate result of J&J's breaches of express warranties, as alleged herein, Plaintiff Vaidis and the members of the Colorado Class sustained an economic loss in an amount to be proven at trial.

249.    Plaintiff Vaidis and the members of the Colorado Class gave J&J reasonable notice of their breaches of express warranty and an opportunity to cure such breaches or, in the alternative, were not required to do so because such an opportunity would be unnecessary and futile given that J&J is unable to cure the defect in the Sunscreen Products.

250.    As a result of J&J's breaches of express warranties, as alleged herein, Plaintiff Vaidis and the members of the Colorado Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

C.    **Breach of Express Warranty (Fla. Stat. Ann. § 672.313) (On Behalf of the Florida Class)**

251.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs as if fully set forth herein.

252.     Plaintiff Trainor brings this cause of action on behalf of herself and the Florida Class.

253.     J&J is, and at all relevant times was, a "merchant" with respect to the Sunscreen Products within the meaning of Fla. Stat. Ann. § 672.313 and a "seller" of the Sunscreen Products within the meaning of Fla. Stat. Ann. § 672.313.

254.     Plaintiff Trainor and the members of the Florida Class are, and at all relevant times were, "buyers" within the meaning of Fla. Stat. Ann. § 672.313.

255.     In connection with their sale of the Sunscreen Products, by and through statements in labels, publications, and other written materials intended for consumers and the general public, J&J made certain express affirmations of fact and/or promises relating to the Sunscreen Products to Plaintiff Trainor and the members of the Florida Class, as alleged herein, including that such products were safe for human consumption and fit to be used for their intended purpose. These express affirmations of fact and/or promises include incomplete warnings and instructions that purport, but fail, to include the complete array of risks associated with use of and/or exposure to the Sunscreen Products.

256.     J&J advertised, labeled, marketed, and promoted the Sunscreen Products with such express affirmations of fact and/or promises in such a way as to induce their purchase or use by Plaintiff Trainor and the members of the Florida Class, thereby making an express warranty that the Sunscreen Products would conform to the representations.

257.     J&J's affirmations of fact and/or promises about the Sunscreen Products, as set forth herein, constituted affirmations of fact or promises made by the seller to the buyer, which related to the goods and became part of the basis of the bargain, thus creating an express warranty that the goods would conform to the representations.

258.     Despite the express warranties J&J created with respect to the Sunscreen Products, J&J delivered Sunscreen Products to Plaintiff Trainor and the members of the Florida Class that did not conform to J&J's express warranties in that such products were dangerous and unfit for use, did not contain labels representing the true and adequate nature of the risks associated with their use, and were not merchantable or safe for their intended, ordinary, and foreseeable use and purpose. Specifically, J&J breached the express warranties in the following ways:

- J&J represented through their labeling, advertising, and marketing materials that the Sunscreen Products were safe, and intentionally withheld and concealed information about the risks of serious injury associated with use of the Sunscreen Products and by expressly limiting the risks associated with use within their warnings and labels; and

- J&J represented that the Sunscreen Products were safe for use and intentionally concealed information that demonstrated that they had carcinogenic properties, and that the Sunscreen Products, therefore, were not safer than alternatives available on the market.

259.     J&J had sole access to material facts concerning the nature of the risks associated with the Sunscreen Products, as expressly stated within their warnings and labels, and knew that consumers and users such as Plaintiff Trainor and the members of the Florida Class could not have reasonably discovered that the risks expressly included in the Sunscreen Products' warnings and labels were inadequate and inaccurate.

260.     As a direct and proximate result of J&J's breaches of express warranties, as alleged herein, Plaintiff Trainor and the members of the Florida Class sustained an economic loss in an amount to be proven at trial.

261.     Plaintiff Trainor and the members of the Florida Class gave J&J reasonable notice of their breaches of express warranty and an opportunity to cure such breaches or, in the alternative, were not required to do so because such an opportunity would be unnecessary and futile given that J&J is unable to cure the defect in the Sunscreen Products.

262.     As a result of J&J's breaches of express warranties, as alleged herein, Plaintiff Trainor and the members of the Florida Class seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**D.     Breach of Express Warranty (N.C. Gen. Stat. Ann. § 25-2-313) (On Behalf of the North Carolina Class)**

263.     Plaintiffs incorporate by reference the allegations in the preceding paragraphs as if fully set forth herein.

264.     Plaintiff Melquist brings this cause of action on behalf of himself and the North Carolina Class.

265.     J&J is, and at all relevant times was, a "merchant" with respect to the Sunscreen Products within the meaning of N.C. Gen. Stat. Ann. § 25-2-313 and a "seller" of the Sunscreen Products within the meaning of N.C. Gen. Stat. Ann. § 25-2-313.

266.     Plaintiff Melquist and the members of the North Carolina Class are, and at all relevant times were, "buyers" within the meaning of N.C. Gen. Stat. Ann. § 25-2-313.

267.     In connection with their sale of the Sunscreen Products, by and through statements in labels, publications, and other written materials intended for consumers and the general public, J&J made certain express affirmations of fact and/or promises relating to the Sunscreen Products to Plaintiff Melquist and the members of the North Carolina Class, as alleged herein, including that such products were safe for human consumption and fit to be used for their intended purpose. These express affirmations of fact and/or promises include incomplete warnings and instructions that purport, but fail, to include the complete array of risks associated with use of and/or exposure to the Sunscreen Products.

268.     J&J advertised, labeled, marketed, and promoted the Sunscreen Products with such express affirmations of fact and/or promises in such a way as to induce their purchase or use by

Plaintiff Melquist and the members of the North Carolina Class, thereby making an express warranty that the Sunscreen Products would conform to the representations.

269.    J&J's affirmations of fact and/or promises about the Sunscreen Products, as set forth herein, constituted affirmations of fact or promises made by the seller to the buyer, which related to the goods and became part of the basis of the bargain, thus creating an express warranty that the goods would conform to the representations.

270.    The express warranties J&J created with respect to the Sunscreen Products were material to reasonable consumers, including Plaintiff Melquist and the members of the North Carolina Class, who were intended beneficiaries of J&J's express warranties and who justifiably relied on J&J's express warranties in connection with their decision to purchase the Sunscreen Products. Specifically, Plaintiff Melquist and the members of the North Carolina Class detrimentally relied on the express warranties and representations of J&J concerning the safety and/or risk profile of the Sunscreen Products in deciding to purchase the product. Plaintiff Melquist and the North Carolina Class members reasonably relied upon J&J to disclose known defects, risks, dangers, and side effects of the Sunscreen Products. Plaintiff Melquist and the North Carolina Class members would not have purchased or used the Sunscreen Products had J&J properly disclosed the risks associated with the product, either through advertising, labeling, or any other form of disclosure.

271.    Despite the express warranties J&J created with respect to the Sunscreen Products, J&J delivered Sunscreen Products to Plaintiff Melquist and the members of the North Carolina Class that did not conform to J&J's express warranties in that such products were dangerous and unfit for use, did not contain labels representing the true and adequate nature of the risks associated

with their use, and were not merchantable or safe for their intended, ordinary, and foreseeable use and purpose. Specifically, J&J breached the express warranties in the following ways:

- J&J represented through their labeling, advertising, and marketing materials that the Sunscreen Products were safe, and intentionally withheld and concealed information about the risks of serious injury associated with use of the Sunscreen Products and by expressly limiting the risks associated with use within their warnings and labels; and

- J&J represented that the Sunscreen Products were safe for use and intentionally concealed information that demonstrated that they had carcinogenic properties, and that the Sunscreen Products, therefore, were not safer than alternatives available on the market.

272.    J&J had sole access to material facts concerning the nature of the risks associated with the Sunscreen Products, as expressly stated within their warnings and labels, and knew that consumers and users such as Plaintiff Melquist and the members of the North Carolina Class could not have reasonably discovered that the risks expressly included in the Sunscreen Products' warnings and labels were inadequate and inaccurate.

273.    As a direct and proximate result of J&J's breaches of express warranties, as alleged herein, Plaintiff Melquist and the members of the North Carolina Class sustained an economic loss in an amount to be proven at trial.

274.    As a result of J&J's breaches of express warranties, as alleged herein, Plaintiff Melquist and the members of the North Carolina Class seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

E.     **Breach of Express Warranty (Or. Rev. Stat. Ann. § 72.3130) (On Behalf of the Oregon Class)**

275.     Plaintiffs incorporate by reference the allegations in the preceding paragraphs as if fully set forth herein.

276.     Plaintiff Bodine brings this cause of action on behalf of himself and the Oregon Class.

277.     J&J is, and at all relevant times was, a "merchant" with respect to the Sunscreen Products within the meaning of Or. Rev. Stat. Ann. § 72.3130 and a "seller" of the Sunscreen Products within the meaning of Or. Rev. Stat. Ann. § 72.3130.

278.     Plaintiff Bodine and the members of the Oregon Class are, and at all relevant times were, "buyers" within the meaning of Or. Rev. Stat. Ann. § 72.3130.

279.     In connection with its sale of the Sunscreen Products, by and through statements in labels, publications, and other written materials intended for consumers and the general public, J&J made certain express affirmations of fact and/or promises relating to the Sunscreen Products to Plaintiff Bodine and the members of the Oregon Class, as alleged herein, including that such products were safe for human consumption and fit to be used for their intended purpose. These express affirmations of fact and/or promises include incomplete warnings and instructions that purport, but fail, to include the complete array of risks associated with use of and/or exposure to the Sunscreen Products.

280.     J&J advertised, labeled, marketed, and promoted the Sunscreen Products with such express affirmations of fact and/or promises in such a way as to induce their purchase or use by Plaintiff Bodine and the members of the Oregon Class, thereby making an express warranty that the Sunscreen Products would conform to the representations.

281.    J&J's affirmations of fact and/or promises about the Sunscreen Products, as set forth herein, constituted affirmations of fact or promises made by the seller to the buyer, which related to the goods and became part of the basis of the bargain, thus creating an express warranty that the goods would conform to the representations.

282.    Despite the express warranties J&J created with respect to the Sunscreen Products, J&J delivered Sunscreen Products to Plaintiff Bodine and the members of the Oregon Class that did not conform to J&J's express warranties in that such products were dangerous and unfit for use, did not contain labels representing the true and adequate nature of the risks associated with their use, and were not merchantable or safe for their intended, ordinary, and foreseeable use and purpose. Specifically, J&J breached the express warranties in the following ways:

- J&J represented through its labeling, advertising, and marketing materials that the Sunscreen Products were safe, and intentionally withheld and concealed information about the risks of serious injury associated with use of the Sunscreen Products and by expressly limiting the risks associated with use within their warnings and labels; and

- J&J represented that the Sunscreen Products were safe for use and intentionally concealed information that demonstrated that they had carcinogenic properties, and that the Sunscreen Products, therefore, were not safer than alternatives available on the market.

283.    J&J had sole access to material facts concerning the nature of the risks associated with the Sunscreen Products, as expressly stated within their warnings and labels, and knew that consumers and users such as Plaintiff Bodine and the members of the Oregon Class could not have reasonably discovered that the risks expressly included in the Sunscreen Products' warnings and labels were inadequate and inaccurate.

284.    As a direct and proximate result of J&J's breaches of express warranties, as alleged herein, Plaintiff Bodine and the members of the Oregon Class sustained an economic loss in an amount to be proven at trial.

285.    Plaintiff Bodine and the members of the Oregon Class gave J&J reasonable notice of its breaches of express warranty and an opportunity to cure such breaches or, in the alternative, were not required to do so because such an opportunity would be unnecessary and futile given that J&J is unable to cure the defect in the Sunscreen Products.

286.    As a result of J&J's breaches of express warranties, as alleged herein, Plaintiff Bodine and the members of the Oregon Class seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**F.    Breach of Express Warranty (S.C. Code Ann. § 36-2-313) (On Behalf of the South Carolina Class)**

287.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs as if fully set forth herein.

288.    Plaintiff Hall brings this cause of action on behalf of himself and the South Carolina Class.

289.    J&J is, and at all relevant times was, a "merchant" with respect to the Sunscreen Products within the meaning of S.C. Code Ann. § 36-2-313 and a "seller" of the Sunscreen Products within the meaning of S.C. Code Ann. § 36-2-313.

290.    Plaintiff Hall and the members of the South Carolina Class are, and at all relevant times were, "buyers" within the meaning of S.C. Code Ann. § 36-2-313.

291.    In connection with their sale of the Sunscreen Products, by and through statements in labels, publications, and other written materials intended for consumers and the general public, J&J made certain express affirmations of fact and/or promises relating to the Sunscreen Products to Plaintiff Hall and the members of the South Carolina Class, as alleged herein, including that such products were safe for human consumption and fit to be used for their intended purpose. These express affirmations of fact and/or promises include incomplete warnings and instructions

that purport, but fail, to include the complete array of risks associated with use of and/or exposure to the Sunscreen Products.

292.    J&J advertised, labeled, marketed, and promoted the Sunscreen Products with such express affirmations of fact and/or promises in such a way as to induce their purchase or use by Plaintiff Hall and the members of the South Carolina Class, thereby making an express warranty that the Sunscreen Products would conform to the representations.

293.    J&J's affirmations of fact and/or promises about the Sunscreen Products, as set forth herein, constituted affirmations of fact or promises made by the seller to the buyer, which related to the goods and became part of the basis of the bargain, thus creating an express warranty that the goods would conform to the representations.

294.    Despite the express warranties J&J created with respect to the Sunscreen Products, J&J delivered Sunscreen Products to Plaintiff Hall and the members of the South Carolina Class that did not conform to J&J's express warranties in that such products were dangerous and unfit for use, did not contain labels representing the true and adequate nature of the risks associated with their use, and were not merchantable or safe for their intended, ordinary, and foreseeable use and purpose. Specifically, J&J breached the express warranties in the following ways:

- J&J represented through their labeling, advertising, and marketing materials that the Sunscreen Products were safe, and intentionally withheld and concealed information about the risks of serious injury associated with use of the Sunscreen Products and by expressly limiting the risks associated with use within their warnings and labels; and

- J&J represented that the Sunscreen Products were safe for use and intentionally concealed information that demonstrated that they had carcinogenic properties, and that the Sunscreen Products, therefore, were not safer than alternatives available on the market.

295.    J&J had sole access to material facts concerning the nature of the risks associated with the Sunscreen Products, as expressly stated within their warnings and labels, and knew that

consumers and users such as Plaintiff Hall and the members of the South Carolina Class could not have reasonably discovered that the risks expressly included in the Sunscreen Products' warnings and labels were inadequate and inaccurate.

296.   As a direct and proximate result of J&J's breaches of express warranties, as alleged herein, Plaintiff Hall and the members of the South Carolina Class sustained an economic loss in an amount to be proven at trial.

297.   As a result of J&J's breaches of express warranties, as alleged herein, Plaintiff Hall and the members of the South Carolina Class seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**G.     Breach of Express Warranty (Tenn. Code Ann. § 47-2-313) (On Behalf of the Tennessee Class)**

298.   Plaintiffs incorporate by reference the allegations in the preceding paragraphs as if fully set forth herein.

299.   Plaintiff Johnson brings this cause of action on behalf of himself and the Tennessee Class.

300.   J&J is, and at all relevant times was, a "merchant" with respect to the Sunscreen Products within the meaning of Tenn. Code Ann. § 47-2-313 and a "seller" of the Sunscreen Products within the meaning of Tenn. Code Ann. § 47-2-313.

301.   Plaintiff Johnson and the members of the Tennessee Class are, and at all relevant times were, "buyers" within the meaning of Tenn. Code Ann. § 47-2-313.

302.   In connection with their sale of the Sunscreen Products, by and through statements in labels, publications, and other written materials intended for consumers and the general public, J&J made certain express affirmations of fact and/or promises relating to the Sunscreen Products

to Plaintiff Johnson and the members of the Tennessee Class, as alleged herein, including that such products were safe for human consumption and fit to be used for their intended purpose. These express affirmations of fact and/or promises include incomplete warnings and instructions that purport, but fail, to include the complete array of risks associated with use of and/or exposure to the Sunscreen Products.

303.     J&J advertised, labeled, marketed, and promoted the Sunscreen Products with such express affirmations of fact and/or promises in such a way as to induce their purchase or use by Plaintiff Johnson and the members of the Tennessee Class, thereby making an express warranty that the Sunscreen Products would conform to the representations.

304.     J&J's affirmations of fact and/or promises about the Sunscreen Products, as set forth herein, constituted affirmations of fact or promises made by the seller to the buyer, which related to the goods and became part of the basis of the bargain, thus creating an express warranty that the goods would conform to the representations.

305.     Despite the express warranties J&J created with respect to the Sunscreen Products, J&J delivered Sunscreen Products to Plaintiff Johnson and the members of the Tennessee Class that did not conform to J&J's express warranties in that such products were dangerous and unfit for use, did not contain labels representing the true and adequate nature of the risks associated with their use, and were not merchantable or safe for their intended, ordinary, and foreseeable use and purpose. Specifically, J&J breached the express warranties in the following ways:

- J&J represented through their labeling, advertising, and marketing materials that the Sunscreen Products were safe, and intentionally withheld and concealed information about the risks of serious injury associated with use of the Sunscreen Products and by expressly limiting the risks associated with use within their warnings and labels; and

- J&J represented that the Sunscreen Products were safe for use and intentionally concealed information that demonstrated that they had carcinogenic properties,

and that the Sunscreen Products, therefore, were not safer than alternatives available on the market.

306.    J&J had sole access to material facts concerning the nature of the risks associated with the Sunscreen Products, as expressly stated within their warnings and labels, and knew that consumers and users such as Plaintiff Johnson and the members of the Tennessee Class could not have reasonably discovered that the risks expressly included in the Sunscreen Products' warnings and labels were inadequate and inaccurate.

307.    As a direct and proximate result of J&J's breaches of express warranties, as alleged herein, Plaintiff Johnson and the Tennessee Class members sustained an economic loss in an amount to be proven at trial.

308.    As a result of J&J's breaches of express warranties, as alleged herein, Plaintiff Johnson and the Tennessee Class members seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### H.    Breach of Express Warranty (Wash. Rev. Code Ann. § 62A 2-313) (On Behalf of the Washington Class)

309.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs as if fully set forth herein.

310.    Plaintiff Ellingson brings this cause of action on behalf of herself and the Washington Class.

311.    J&J is, and at all relevant times was, a "merchant" with respect to the Sunscreen Products within the meaning of Wash. Rev. Code Ann. § 62A.2-313 and a "seller" of the Sunscreen Products within the meaning of Wash. Rev. Code Ann. § 62A.2-313.

312.    Plaintiff Ellingson and the members of the Washington Class are, and at all relevant times were, "buyers" within the meaning of Wash. Rev. Code Ann. § 62A.2-313.

313.    In connection with their sale of the Sunscreen Products, by and through statements in labels, publications, and other written materials intended for consumers and the general public, J&J made certain express affirmations of fact and/or promises relating to the Sunscreen Products to Plaintiff Ellingson and the members of the Washington Class, as alleged herein, including that such products were safe for human consumption and fit to be used for their intended purpose. These express affirmations of fact and/or promises include incomplete warnings and instructions that purport, but fail, to include the complete array of risks associated with use of and/or exposure to the Sunscreen Products.

314.    J&J advertised, labeled, marketed, and promoted the Sunscreen Products with such express affirmations of fact and/or promises in such a way as to induce their purchase or use by Plaintiff Ellingson and the members of the Washington Class, thereby making an express warranty that the Sunscreen Products would conform to the representations.

315.    J&J's affirmations of fact and/or promises about the Sunscreen Products, as set forth herein, constituted affirmations of fact or promises made by the seller to the buyer, which related to the goods and became part of the basis of the bargain, thus creating an express warranty that the goods would conform to the representations.

316.    Despite the express warranties J&J created with respect to the Sunscreen Products, J&J delivered Sunscreen Products to Plaintiff Ellingson and the members of the Washington Class that did not conform to J&J's express warranties in that such products were dangerous and unfit for use, did not contain labels representing the true and adequate nature of the risks associated with their use, and were not merchantable or safe for their intended, ordinary, and foreseeable use and purpose. Specifically, J&J breached the express warranties in the following ways.

- J&J represented through its labeling, advertising, and marketing materials that the Sunscreen Products were safe, and intentionally withheld and concealed

information about the risks of serious injury associated with use of the Sunscreen Products and by expressly limiting the risks associated with use within their warnings and labels; and

- J&J represented that the Sunscreen Products were safe for use and intentionally concealed information that demonstrated that they had carcinogenic properties, and that the Sunscreen Products, therefore, were not safer than alternatives available on the market.

317.   J&J had sole access to material facts concerning the nature of the risks associated with the Sunscreen Products, as expressly stated within their warnings and labels, and knew that consumers and users such as Plaintiff Ellingson and the members of the Washington Class could not have reasonably discovered that the risks expressly included in the Sunscreen Products' warnings and labels were inadequate and inaccurate.

318.   As a direct and proximate result of J&J's breaches of express warranties, as alleged herein, Plaintiff Ellingson and the members of the Washington Class sustained an economic loss in an amount to be proven at trial.

319.   As a result of J&J's breaches of express warranties, as alleged herein, Plaintiff Ellingson and the members of the Washington Class seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

## <u>FOURTH CAUSE OF ACTION</u>
Breach of Warranty—Implied Warranty
(On Behalf of the State-Specific Classes)

**A.    Breach of Implied Warranty (Cal. Com. Code § 2314) (On Behalf of the California Class)**

320.   Plaintiffs incorporate by reference the allegations in the preceding paragraphs as if fully set forth herein.

321.   Plaintiff Stolzenbach brings this cause of action on behalf of herself and the California Class.

322.    At all relevant times, J&J was a merchant with respect to the Sunscreen Products which were sold to Plaintiff Stolzenbach and the members of the California Class and was in the business of selling such products.

323.    Each Sunscreen Product sold by J&J comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used. Cal. Com. Code § 2314.

324.    J&J breached its implied warranty of merchantability because its products were not in merchantable condition when sold, did not conform to the promises and affirmations of fact made on the products' containers or labels, and/or do not possess even the most basic degree of fitness for ordinary use.

325.    J&J's Sunscreen Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended, and their use carries an increased risk of developing severe injuries.

326.    Plaintiff Stolzenbach and the members of the California Class have had sufficient direct dealings with either J&J or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between J&J and Plaintiff Stolzenbach and the members of the California Class.

327.    Further, Plaintiff Stolzenbach and the members of the California Class were the intended third-party beneficiaries of the implied warranties made by J&J to purchasers of their Sunscreen Products.

328.    Plaintiff Stolzenbach and the members of the California Class were injured as a direct and proximate result of J&J's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of the Sunscreen Products, they would not have purchased such products.

329.     As a result of J&J's breaches of implied warranties of merchantability, as alleged herein, Plaintiff Stolzenbach and the members of the California Class seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**B.      Breach of Implied Warranty (Colo. Rev. Stat. Ann. § 4-2-314) (On Behalf of the Colorado Class)**

330.     Plaintiffs incorporate by reference the allegations in the preceding paragraphs as if fully set forth herein.

331.     Plaintiff Vaidis brings this cause of action on behalf of herself and the Colorado Class.

332.     At all relevant times, J&J was a merchant with respect to the Sunscreen Products which were sold to Plaintiff Vaidis and the members of the Colorado Class and was in the business of selling such products.

333.     Each Sunscreen Product sold by J&J comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used. Colo. Rev. Stat. Ann. § 4-2-314.

334.     J&J breached its implied warranty of merchantability because its products were not in merchantable condition when sold, did not conform to the promises and affirmations of fact made on the products' containers or labels, and/or do not possess even the most basic degree of fitness for ordinary use.

335.     J&J's Sunscreen Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended, and their use carries an increased risk of developing severe injuries.

336.    Plaintiff Vaidis and the members of the Colorado Class have had sufficient direct dealings with either J&J or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between J&J and Plaintiff Vaidis and the members of the Colorado Class.

337.    Further, Plaintiff Vaidis and the members of the Colorado Class were the intended third-party beneficiaries of the implied warranties made by J&J to purchasers of their Sunscreen Products.

338.    Plaintiff Vaidis and the members of the Colorado Class were injured as a direct and proximate result of J&J's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of the Sunscreen Products, they would not have purchased such products.

339.    As a result of J&J's breaches of implied warranties of merchantability, as alleged herein, Plaintiff Vaidis and the members of the Colorado Class seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### C.    Breach of Implied Warranty (Fla. Stat. Ann. § 672.314) (On Behalf of the Florida Class)

340.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs as if fully set forth herein.

341.    Plaintiff Trainor brings this cause of action on behalf of herself and the Florida Class.

342.    At all relevant times, J&J was a merchant with respect to the Sunscreen Products which were sold to Plaintiff Trainor and the members of the Florida Class and was in the business of selling such products.

343.     Each Sunscreen Product sold by J&J comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used. Fla. Stat. Ann. § 672.314.

344.     J&J breached its implied warranty of merchantability because its products were not in merchantable condition when sold, did not conform to the promises and affirmations of fact made on the products' containers or labels, and/or do not possess even the most basic degree of fitness for ordinary use.

345.     J&J's Sunscreen Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended, and their use carries an increased risk of developing severe injuries.

346.     Plaintiff Trainor and the members of the Florida Class have had sufficient direct dealings with either J&J or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between J&J and Plaintiff Trainor and the members of the Florida Class.

347.     Further, Plaintiff Trainor and the members of the Florida Class were the intended third-party beneficiaries of the implied warranties made by J&J to purchasers of their Sunscreen Products.

348.     Plaintiff Trainor and the members of the Florida Class were injured as a direct and proximate result of J&J's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of the Sunscreen Products, they would not have purchased such products.

349.     As a result of J&J's breaches of implied warranties of merchantability, as alleged herein, Plaintiff Trainor and the members of the Florida Class seek an order awarding

compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

     **D.**    **Breach of Implied Warranty (N.C. Gen. Stat. Ann. § 25-2-314) (On Behalf of the North Carolina Class)**

350.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs as if fully set forth herein.

351.    Plaintiff Melquist brings this cause of action on behalf of himself and the North Carolina Class.

352.    At all relevant times, J&J was a merchant with respect to the Sunscreen Products which were sold to Plaintiff Melquist and the members of the North Carolina Class and was in the business of selling such products.

353.    Each Sunscreen Product sold by J&J comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used. N.C. Gen. Stat. Ann. § 25-2-314.

354.    J&J breached its implied warranty of merchantability because its products were not in merchantable condition when sold, did not conform to the promises and affirmations of fact made on the products' containers or labels, and/or do not possess even the most basic degree of fitness for ordinary use.

355.    J&J's Sunscreen Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended, and their use carries an increased risk of developing severe injuries.

356.    Plaintiff Melquist and the members of the North Carolina Class have had sufficient direct dealings with either J&J or its agents (including distributors, dealers, and authorized sellers)

to establish privity of contract between J&J and Plaintiff Melquist and the members of the North Carolina Class.

357.    Further, Plaintiff Melquist and the members of the North Carolina Class were the intended third-party beneficiaries of the implied warranties made by J&J to purchasers of their Sunscreen Products.

358.    Plaintiff Melquist and the members of the North Carolina Class were injured as a direct and proximate result of J&J's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of the Sunscreen Products, they would not have purchased such products.

359.    As a result of J&J's breaches of implied warranties of merchantability, as alleged herein, Plaintiff Melquist and the members of the North Carolina Class seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**E.    Breach of Implied Warranty (Or. Rev. Stat. Ann. § 72.3140) (On Behalf of the Oregon Class)**

360.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs as if fully set forth herein.

361.    Plaintiff Bodine brings this cause of action on behalf of himself and the Oregon Class.

362.    At all relevant times, J&J was a merchant with respect to the Sunscreen Products which were sold to Plaintiff Bodine and the members of the Oregon Class and was in the business of selling such products.

363.    Each Sunscreen Product sold by J&J comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used. Or. Rev. Stat. Ann. § 72.3140.

364.    J&J breached its implied warranty of merchantability because its products were not in merchantable condition when sold, did not conform to the promises and affirmations of fact made on the products' containers or labels, and/or do not possess even the most basic degree of fitness for ordinary use.

365.    J&J's Sunscreen Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended, and their use carries an increased risk of developing severe injuries.

366.    Plaintiff Bodine and each member of the Oregon Class have had sufficient direct dealings with either J&J or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between J&J and Plaintiff Bodine and the members of the Oregon Class.

367.    Further, Plaintiff Bodine and the members of the Oregon Class were the intended third-party beneficiaries of the implied warranties made by J&J to purchasers of the Sunscreen Products.

368.    Plaintiff Bodine and the members of the Oregon Class were injured as a direct and proximate result of J&J's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of the Sunscreen Products, they would not have purchased such products.

369.    As a result of J&J's breaches of implied warranties of merchantability, as alleged herein, Plaintiff Bodine and the members of the Oregon Class seek an order awarding

compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### F.   Breach of Implied Warranty (S.C. Code Ann. § 36-2-314) (On Behalf of the South Carolina Class)

370.   Plaintiffs incorporate by reference the allegations in the preceding paragraphs as if fully set forth herein.

371.   Plaintiff Hall brings this cause of action on behalf of himself and the South Carolina Class.

372.   At all relevant times, J&J was a merchant with respect to the Sunscreen Products which were sold to Plaintiff Hall and the members of the South Carolina Class and were in the business of selling such products.

373.   Each Sunscreen Product sold by J&J comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used. S.C. Code Ann. § 36-2-314.

374.   J&J breached its implied warranty of merchantability because its products were not in merchantable condition when sold, did not conform to the promises and affirmations of fact made on the products' containers or labels, and/or do not possess even the most basic degree of fitness for ordinary use.

375.   J&J's Sunscreen Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended, and their use carries an increased risk of developing severe injuries.

376.   Plaintiff Hall and the members of the South Carolina Class have had sufficient direct dealings with either J&J or its agents (including distributors, dealers, and authorized sellers)

to establish privity of contract between J&J and Plaintiff Hall and the members of the South Carolina Class.

377.    Further, Plaintiff Hall and the members of the South Carolina Class were the intended third-party beneficiaries of the implied warranties made by J&J to purchasers of the Sunscreen Products.

378.    Plaintiff Hall and the members of the South Carolina Class were injured as a direct and proximate result of J&J's breaches of implied warranties of merchantability. Plaintiff Hall and the members of the South Carolina Class were damaged as a result of J&J's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of the Sunscreen Products, they would not have purchased such products.

379.    As a result of J&J's breaches of implied warranties of merchantability, as alleged herein, Plaintiff Hall and the members of the South Carolina Class seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**G.      Breach of Implied Warranty (Tenn. Code Ann. § 47-2-314) (On Behalf of the Tennessee Class)**

380.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs as if fully set forth herein.

381.    Plaintiff Johnson brings this cause of action on behalf of himself and the Tennessee Class.

382.    At all relevant times, J&J was a merchant with respect to the Sunscreen Products which were sold to Plaintiff Johnson and the members of the Tennessee Class and was in the business of selling such products.

383.    Each Sunscreen Product sold by J&J comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used. Tenn. Code Ann. § 47-2-314.

384.    J&J breached its implied warranty of merchantability because its products were not in merchantable condition when sold, did not conform to the promises and affirmations of fact made on the products' containers or labels, and/or do not possess even the most basic degree of fitness for ordinary use.

385.    J&J's Sunscreen Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended, and their use carries an increased risk of developing severe injuries.

386.    Plaintiff Johnson and the members of the Tennessee Class have had sufficient direct dealings with either J&J or its agents (including distributors, dealers, and authorized sellers) to establish privity of contract between J&J and Plaintiff Johnson and the members of the Tennessee Class.

387.    Further, Plaintiff Johnson and the members of the Tennessee Class were the intended third-party beneficiaries of the implied warranties made by J&J to purchasers of their Sunscreen Products.

388.    Plaintiff Johnson and the members of the Tennessee Class were injured as a direct and proximate result of J&J's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of the Sunscreen Products, they would not have purchased such products.

389.    As a result of J&J's breaches of implied warranties of merchantability, as alleged herein, Plaintiff Johnson and the members of the Tennessee Class seek an order awarding

compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

### H.  Breach of Implied Warranty (Wash. Rev. Code Ann. § 62A.2-314) (On Behalf of the Washington Class)

390.    Plaintiffs incorporate by reference the allegations in the preceding paragraphs as if fully set forth herein.

391.    Plaintiff Ellingson brings this cause of action on behalf of herself and the Washington Class.

392.    At all relevant times, J&J was a merchant with respect to the Sunscreen Products which were sold to Plaintiff Ellingson and the members of the Washington Class and was in the business of selling such products.

393.    Each Sunscreen Product sold by J&J comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used. Wash. Rev. Code Ann. § 62A 2-314.

394.    J&J breached its implied warranty of merchantability because its products were not in merchantable condition when sold, did not conform to the promises and affirmations of fact made on the products' containers or labels, and/or do not possess even the most basic degree of fitness for ordinary use.

395.    J&J's Sunscreen Products are not fit for their intended use – or any use – because they have dangerous propensities when used as intended, and their use carries an increased risk of developing severe injuries.

396.    Plaintiff Ellingson and the members of the Washington Class have had sufficient direct dealings with either J&J or its agents (including distributors, dealers, and authorized sellers)

to establish privity of contract between J&J and Plaintiff Ellingson and the members of the Washington Class.

397.    Further, Plaintiff Ellingson and the members of the Washington Class were the intended third-party beneficiaries of the implied warranties made by J&J to purchasers of their Sunscreen Products.

398.    Plaintiff Ellingson and the members of the Washington Class were injured as a direct and proximate result of J&J's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of the Sunscreen Products, they would not have purchased such products.

399.    As a result of J&J's breaches of implied warranties of merchantability, as alleged herein, Plaintiff Ellingson and the members of the Washington Class seek an order awarding compensatory and punitive damages, costs, attorneys' fees, and any other just and proper relief available under the law.

**FIFTH CAUSE OF ACTION**
Unjust Enrichment
(On Behalf of the Nationwide Class)

400.    Plaintiffs assert this claim on behalf of the Nationwide Class.

401.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

402.    As a result of the unlawful conduct described herein, J&J has and will continue to be unjustly enriched. J&J has been unjustly enriched by the receipt of revenues received for the Sunscreen Products, revenues they would not have received had the presence of benzene in the Sunscreen Products been known to consumers.

403.    J&J has benefited from its unlawful conduct and it would be inequitable for J&J to be permitted to retain any of the ill-gotten gains received for its Sunscreen Products.

404.     Plaintiffs and members of the Nationwide Class are entitled to the amount of J&J's ill-gotten gains resulting from their unlawful, unjust, and inequitable conduct. Plaintiffs and members of the Nationwide Class are entitled to a constructive trust consisting of all ill-gotten gains from which Plaintiffs and members of the Nationwide Class may make claims on a pro rata basis.

## **PRAYER FOR RELIEF**

Accordingly, Plaintiffs respectfully request:

a.  The Court determine that this action may be maintained as a class action under Rules 23(a), (b)(2) and (b)(3) and direct that reasonable notice of this action be given to each and every member of the Classes as provided by Rule 23(c)(2);

b.  That J&J's unlawful conduct be adjudged and decreed violations of the laws set forth above;

c.  An injunction requiring J&J to refrain from engaging in the unlawful conduct alleged in this complaint, to recall all other sunscreen products containing benzene, to implement procedures to identify other products that may contain benzene, to require J&J to disclose the amount of benzene present in any product it sells, and to preclude J&J from selling any products without disclosing that they contain benzene and to what extent;

d.  Plaintiffs and members of the Classes recover damages, including treble damages, to the maximum extent allowed under the law, and that a joint and several judgment in favor of Plaintiff and members of the Classes be entered against J&J;

e.  Plaintiffs and members of the Classes be awarded restitution for J&J's ill-gotten gains resulting from their unlawful and inequitable unjust enrichment;

f.   Plaintiffs and members of the Classes recover their costs of suit, including

     reasonable attorneys' fees as provided by law; and

g.   Plaintiffs and members of the class be granted such other and further relief as the

     case may require and the Court deems just and proper.

**<u>DEMAND FOR JURY TRIAL</u>**

Plaintiffs demand a jury trial on all claims so triable.


Dated: July 29, 2021                        Respectfully submitted,


                                            <u>/s/James E. Cecchi</u>
                                            James E. Cecchi
                                            Kevin G. Cooper
                                            **CARELLA, BYRNE, CECCHI,**
                                            **OLSTEIN, BRODY & AGNELLO P.C.**
                                            5 Becker Farm Rd.
                                            Roseland, New Jersey 07068
                                            Telephone: (973) 994-1700
                                            Facsimile: (973) 994-1744
                                            Email: jcecchi@carellabyrne.com
                                                      kcooper@carellabyrne.com

                                            Kellie Lerner
                                            William V. Reiss
                                            David B. Rochelson
                                            Adam C. Mendel
                                            **ROBINS KAPLAN LLP**
                                            399 Park Avenue, Suite 3600
                                            New York, New York 10022
                                            Telephone: (212) 980-7400
                                            Facsimile: (212) 980-7499
                                            Email: klerner@robinskaplan.com
                                            Email: wreiss@robinskaplan.com
                                            Email: drochelson@robinskaplan.com
                                            Email: amendel@robinskaplan.com

                                            M. Stephen Dampier
                                            **THE DAMPIER LAW FIRM P.C.**
                                            P.O. Box 161
                                            Fairhope, AL 36533
                                            Telephone: (251) 929-0900

Facsimile: (251) 929-0800
Email: stevedampier@dampierlaw.com

Lee McArthur Scott
**MCARTHUR LAW, LLC**
803 Jenks Ave, Ste 4
Panama City, FL 32401-2568
Telephone: (850) 832-3032
Facsimile: (850) 784-7706
Email: lee@mcarthur.law

*Counsel for Plaintiffs and the Proposed Classes*